**Certiorari Denied, February 27, 2014, No. 34,534**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-033**

**Filing Date: December 19, 2013**

**Docket No. 31,480**

**STATE OF NEW MEXICO,**

       **Plaintiff-Appellant,**

**v.**

**GARY MOSELEY,**

       **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellant

Jorge A. Alvarado, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**WECHSLER, Judge.**

**{1}** The State appeals the district court's suppression of evidence obtained as a result of a traffic stop. Deputy Terry McCoy of the San Juan County Sheriff's Department initiated the stop because he observed Defendant driving at a speed of thirty-five miles per hour, and Deputy McCoy believed the speed limit at that location was twenty-five miles per hour.

1

**{2}** The district court determined that the area was neither exclusively business nor exclusively residential in character because it contained both residences and businesses and was a mixed-use zoning district. The district court further decided that no numerical speed limit was applicable to that mixed-use area at the time of the stop and that the only restriction on a driver's speed was the requirement that a driver control his or her speed "as may be necessary[.]" *See* NMSA 1978, § 66-7-301(B) (2002). Applying this finding, the district court granted Defendant's motion to suppress because Defendant was not speeding at the time of the stop, and the sole legal basis for the stop was therefore vitiated.

**{3}** We hold that the district court's interpretation of the applicable speeding statute is not consistent with the intent of the Legislature and leads to an absurd or unreasonable result. We further hold that Deputy McCoy had reasonable suspicion to stop Defendant for speeding, despite his mistaken belief that the speed limit in the area of the stop was twenty-five miles per hour rather than thirty miles per hour. We therefore reverse the district court's grant of Defendant's motion to suppress and remand for further proceedings.

**FACTUAL BACKGROUND**

**{4}** On March 26, 2011, Deputy McCoy was traveling southbound on Orchard Avenue in Farmington when he observed Defendant driving northbound on the same street. Orchard Avenue between Main Street and Apache Street, at the location where Deputy McCoy first observed Defendant, is an area containing mainly businesses; farther north on Orchard Avenue, the character of the area changes to become mainly residential. Because Defendant appeared to be speeding, Deputy McCoy activated the radar unit and noted Defendant's speed at thirty-five miles per hour. Deputy McCoy was under the impression that the speed limit within Farmington's city limits, and specifically in that particular location, was twenty-five miles per hour, and he therefore initiated the traffic stop. Deputy McCoy testified that he witnessed no erratic or improper driving other than Defendant's speeding. Critically, no speed limit signs were posted in the immediate area where Defendant was stopped, although signs declaring the speed limit to be twenty-five miles per hour were subsequently installed.

**{5}** Based on the evidence collected following the stop, the State charged Defendant with non-aggravated driving while under the influence of intoxicating liquor and/or drugs in violation of NMSA 1978, Section 66-8-102 (2010); possession or consumption of an alcoholic beverage in an open container in violation of NMSA 1978, Section 66-8-138 (2001); and speeding in violation of Section 66-7-301. Defendant was convicted of these offenses in the magistrate court and appealed to the district court.

**{6}** In the district court, Defendant filed a motion to suppress the evidence obtained during the traffic stop. Both Defendant and the State filed briefs, and the district court held a hearing on the motion at which evidence and argument were received on the following points: (1) whether any type of speed limit sign had been posted in the area of the stop; (2) whether the lack of such a sign precluded application of the City of Farmington's speed limit of twenty-five miles per hour; (3) whether the lack of such a sign also precluded application

of the speed limit of thirty miles per hour established by state law; (4) whether the character of the area was residential or commercial; and (5) assuming the speed limit of thirty miles per hour applied, whether Deputy McCoy's mistake of law meant that he did not have reasonable suspicion to stop Defendant's vehicle. At the hearing and in its briefs, the State essentially conceded that the municipal speed limit was not applicable due to the lack of posting. The State relied mainly on its argument that Deputy McCoy's mistake did not deprive him of reasonable suspicion for the stop because whether the speed limit was twenty-five miles per hour or thirty miles per hour, by driving thirty-five miles per hour, Defendant was speeding and Deputy McCoy therefore had reasonable suspicion to stop him.

{7}     The district court's written decision found that no speed limit signs had been posted in the area of the stop. The decision also focused on the character of the area as business or residential and held that it is neither; instead, it is designated for mixed use under the applicable zoning code. Finally, the decision construed the state speed limit statute, § 66-7-301, in a unique manner. The district court noted that Section 66-7-301(A)(2) establishes a speed limit of thirty miles per hour in a "business or residence district[.]" The district court held that this language gives no guidance "as to an actual speed limit required on streets if it is not in a school, business or residential area." Building on its determination that the area was neither business nor residential and that Section 66-7-301(A)(2) does not apply to mixed-use districts, the district court concluded that no numerical speed limit was applicable in the area at the time of the stop. Instead, as noted above, the requirement of Section 66-7-301(B), that a driver control speed "as may be necessary" to avoid collisions or other difficulties, was the sole restriction on Defendant's speed at the time he was stopped.

## LEGAL QUESTIONS RAISED

{8}     This case and the district court's decision raise two legal questions bearing discussion. First, did the district court correctly reject the application of Section 66-7-301(A)(2) because the area in question was zoned for mixed use and had mixed-use characteristics? Second, if that decision was not correct, did Deputy McCoy have reasonable suspicion to stop Defendant even if he mistakenly believed the speed limit at the location in question was twenty-five miles per hour rather than thirty miles per hour?

## STANDARD OF REVIEW

{9}     A suppression order based upon an alleged violation of the United States or New Mexico Constitutions entails a mixed question of fact and law. *See State v. Funderburg*, 2008-NMSC-026, ¶ 10, 144 N.M. 37, 183 P.3d 922. "We review factual determinations for substantial evidence and legal determinations de novo." *State v. Ketelson*, 2011-NMSC-023, ¶ 9, 150 N.M. 137, 257 P.3d 957. Article II, Section 10 of the New Mexico Constitution and the Fourth Amendment to the United States Constitution control the validity of investigative stops. *See State v. Muñoz*, 1998-NMCA-140, ¶ 8, 125 N.M. 765, 965 P.2d 349. Before a police officer makes a traffic stop, he must have a reasonable suspicion of illegal activity. *See State v. Flores*, 1996-NMCA-059, ¶ 7, 122 N.M. 84, 920 P.2d 1038 (citing *Terry v.*

3

*Ohio*, 392 U.S. 1, 21-22 (1968)). "Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *Flores*, 1996-NMCA-059, ¶ 7. Reasonable suspicion in New Mexico is analyzed through the use of an objective test. *See State v. Hubble*, 2009-NMSC-014, ¶ 23, 146 N.M. 70, 206 P.3d 579.

## APPLICATION OF SECTION 66-7-301

**{10}** The question of whether Section 66-7-301(A)(2) applies to the present situation is an issue of statutory construction that we review de novo. *State v. Saiz*, 2001-NMCA-035, ¶ 2, 130 N.M. 333, 24 P.3d 365. When interpreting statutory language, "our primary goal is to give effect to the intent of the [L]egislature," and in so doing, "we look first to the plain language of the statute." *Id.* We will give "effect to the plain meaning of the words of [a] statute, unless this leads to an absurd or unreasonable result." *State v. Marshall*, 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801.

**{11}** As noted above, Section 66-7-301(A)(2) imposes a specific speed limit of thirty miles per hour on a "business or residence district[.]" The district court concluded that this limit applies only if an area is either exclusively residential in nature or exclusively business in nature. If an area is zoned for mixed use, as is the area in question in this case, the district court decided Section 66-7-301(A)(2) has no application.

**{12}** However, nothing in Section 66-7-301 indicates that a district must be exclusively composed of only one type of use in order to be subject to the speed limits set out in the statute. The district court superimposed onto the statute a concept found in zoning ordinances, that of a mixed-use district. By doing so, the district court created a third distinct type of district not mentioned in the speeding statute, a district that is not subject to any numerical speed limit under Section 66-7-301(A), but only to the "as may be necessary" discretionary restriction found in Section 66-7-301(B). But there is no indication in the statute that zoning concepts have any role to play in determining applicable speed limits. The only reasonable construction of the statute is that the speed limit of thirty miles per hour applies to areas containing either businesses or residences; it does not matter whether the area contains both. There is no conceivable reason that the Legislature would impose a thirty miles-per-hour restriction on areas that are solely residential, do the same for areas that are solely commercial, but then remove that restriction if the area has characteristics of, or is zoned for, both types of uses.

**{13}** As we pointed out above, we will construe a statute in a manner that will effectuate the Legislature's intent in drafting the law. *Saiz*, 2001-NMCA-035, ¶ 2. We do not believe the Legislature intended to create an immense gap in the application of speed limits simply by failing to add "or both," or similar words, to Section 66-7-301(A)(2). In fact, creating such a gap, as the district court's construction of the statute would do, frustrates the obvious legislative intent and creates an absurd or unreasonable result that we cannot perpetuate. *See Marshall*, 2004-NMCA-104, ¶ 7 (stating that we will give effect to the plain meaning of the

words of a statute unless doing so leads to an absurd or unreasonable result). Instead, we hold that Section 66-7-301(A)(2) applies to districts that are residential in nature or zoning, or business in nature or zoning, or have the characteristics of, and are zoned for, both types of uses.

## EXISTENCE OF REASONABLE SUSPICION

**{14}** Given the above holding, we proceed on the basis that the applicable speed limit at the time of the stop was thirty miles per hour. The evidence presented at the suppression hearing showed that Defendant's vehicle was traveling at thirty-five miles per hour, and there was no contrary evidence. Deputy McCoy stopped Defendant for speeding, but at the time he mistakenly believed the speed limit was twenty-five miles per hour. We must therefore decide the impact, if any, of that mistake on the existence of reasonable suspicion.

**{15}** "[C]onduct premised totally on a mistake of law cannot create the reasonable suspicion needed to make a traffic stop; but if the facts articulated by the officer support reasonable suspicion on another basis, the stop can be upheld." *State v. Anaya*, 2008-NMCA-020, ¶ 15, 143 N.M. 431, 176 P.3d 1163. In other words, if an officer mistakenly believes that certain conduct violates one statute, but that conduct in fact violates a different statute, reasonable suspicion exists to stop the suspect despite the officer's mistake of law. *See id.* ¶ 13 (holding that an incorrect understanding of the law does not render a traffic stop invalid when the observations of an officer provide reasonable grounds to believe another statute was being violated). Thus, "it is not fatal in terms of reasonable suspicion if an officer makes a mistake of law when he conducts a traffic stop[,]" but the totality of the circumstances must indicate that there were other specific and articulable facts upon which the officer could determine there was reasonable suspicion for the stop. *Hubble*, 2009-NMSC-014, ¶ 28.

**{16}** The *Anaya* and *Hubble* rule is clearly applicable in this case. Deputy McCoy mistakenly believed that the speed limit was twenty-five miles per hour, when, in fact, it was thirty miles per hour. With his radar gun, however, he measured Defendant's speed at thirty-five miles per hour, a speed that violated Section 66-7-301(A)(2). He thus had reasonable suspicion to stop Defendant despite his mistake as to which of the two speed limits was applicable in the area of the stop. *See Anaya*, 2008-NMCA-020, ¶ 15 (holding that when facts articulated by an officer support reasonable suspicion that a law has been violated, a mistake of law by the officer does not render a traffic stop invalid).

**{17}** We note Defendant's reliance on the statement from *Anaya* quoted above, to the effect that "conduct premised totally on a mistake of law cannot create the reasonable suspicion needed to make a traffic stop[.]" *Id.* However, this reliance is unavailing because it ignores the second part of that statement: "but if the facts articulated by the officer support reasonable suspicion on another basis, the stop can be upheld." *Id.* That is the situation in this case; Deputy McCoy made a mistake of law, but the facts he observed supported reasonable suspicion that Defendant was speeding in violation of Section 66-7-301(A)(2).

**CONCLUSION**

**{18}**   For the foregoing reasons, we reverse the district court's suppression order and remand this case to the district court for further proceedings.

**{19}   IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**M. MONICA ZAMORA, Judge**

**Topic Index for** *State v. Moseley***, No. 31,480**

**APPEAL AND ERROR**
Standard of Review

**CONSTITUTIONAL LAW**
Suppression of Evidence

**CRIMINAL LAW**
Driving While Intoxicated
Motor Vehicle Violations

**CRIMINAL PROCEDURE**
Mistake of Fact
Reasonable Suspicion

**EVIDENCE**
Suppression of Evidence

**STATUTES**
Legislative Intent
Rules of Construction