# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: July 31, 2017

**NO. 34,518**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JOHN FARISH,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Sergio Viscoli, Appellate Defender
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**OPINION**

**HANISEE, Judge.**

{1}  Defendant John Farish appeals from the district court's on-record affirmance of his convictions in metropolitan court for driving a vehicle with defective equipment, pursuant to NMSA 1978, Section 66-3-801(A) (1991), and driving under the influence (DUI), pursuant to NMSA 1978, Section 66-8-102 (2010). Defendant argues that the officer who stopped his vehicle lacked reasonable suspicion to support the stop. We affirm.

**BACKGROUND**

{2}  At approximately 1:30 a.m. on April 13, 2012, Defendant was stopped by Bernalillo County Sheriff's Deputy Peter Martinez on Montaño Road near Fourth Street in Albuquerque, New Mexico. The basis for the stop was that Deputy Martinez believed Defendant was violating Section 66-3-801(A) by driving a vehicle with defective equipment, specifically an improperly functioning left taillight.[1] Defendant's left taillight consisted of two bulbs: a larger upper bulb, and a smaller lower bulb. While the lower bulb was lit, the upper bulb was not. After first observing Defendant's vehicle, Deputy Martinez followed Defendant for approximately one-quarter mile, during which time he also "observed some driving behaviors that were

---

[1] It is undisputed that Defendant's right taillight was working properly.

possible for someone who might be under the influence." Specifically, he observed Defendant swerve within the lane twice in a manner that nearly drove over the lane markings, though he never saw Defendant leave the lane or touch the markings. Deputy Martinez testified that there were no other violations of law and that his only basis for stopping Defendant was the perceived taillight violation. Upon making contact with Defendant, Deputy Martinez noticed that Defendant had bloodshot, watery eyes and the smell of alcohol coming from his facial area. Deputy Martinez then initiated a DUI investigation, and Defendant was subsequently charged with DUI (first offense) and operating a vehicle with defective equipment.

{3}     Prior to trial, Defendant requested and the metropolitan court held an evidentiary hearing on the question of reasonable suspicion. After Deputy Martinez testified to the above-cited facts, Defendant argued that the charges against him should be dismissed because the testimony indicated that Defendant had two taillights that were in "working condition," meaning that Deputy Martinez lacked reasonable suspicion of a violation of either Section 66-3-801(A) (providing, among other things, that it is a misdemeanor to operate a vehicle "which . . . is not at all times equipped with such lamps and other equipment in proper condition and adjustment as is required by [NMSA 1978, §§ 66-3-801 to -887 (1978, as amended through 2017)]," or Section 66-3-805(A) (setting forth specific requirements for tail lamps),

2

and that there was no other reasonable basis for the stop. Defendant argued that "the light, maybe a bulb, being out was not reason enough to pull over [Defendant.]" Alternatively, Defendant argued that the stop was pretextual. The State argued that Deputy Martinez had reasonable suspicion because part of Defendant's left taillight was not lit, meaning it was not "in proper condition" as required by Section 66-3-801(A). The State also argued that Defendant failed to meet his burden of establishing that the stop was pretextual.

{4}    The metropolitan court found that Deputy Martinez had reasonable suspicion to stop Defendant's vehicle based on Deputy Martinez's observation that part of Defendant's taillight was not illuminated. It reasoned that "[one] light not working out of a two-part light would still be a defective equipment [violation]" under Section 66-3-801, i.e., it was a per se violation. The metropolitan court further found that there was no testimony elicited to support Defendant's argument that the stop was pretextual and therefore denied Defendant's motion to dismiss on that basis as well. Defendant was subsequently convicted of DUI (first offense) and driving a vehicle with defective equipment.

{5}    In his on-record appeal to the district court, Defendant argued that the trial court misapplied Section 66-3-801 because "a plain reading of [Section 66-3-801] indicates that defective equipment is defined in [S]ections 66-3-801 through 66-3-

3

887[,]" making it necessary to "analyze [S]ection 66-3-805(A), which defines functioning tail lamps[.]" Section 66-3-805(A) provides that "[e]very motor vehicle . . . shall be equipped with at least two tail lamps mounted on the rear" and that such lamps "shall emit a red light plainly visible from a distance of [500] feet to the rear[.]" According to Defendant, Deputy Martinez failed to articulate facts that would support reasonable suspicion that Defendant had violated Section 66-3-805(A) because Deputy Martinez conceded that he was, at all times, within 500 feet of the rear of Defendant's vehicle, thus making any suspected violation speculative rather than reasonable. The district court agreed with Defendant that "there can be no violation of Section 66-3-801 with respect to defective tail[]lights without reference to Section 66-3-805" and concluded that "to the extent Deputy Martinez relied on Section[s] 66-3-801 [and -805(A)] for a per se violation, the [district c]ourt agrees the officer made a mistake of law." However, the district court construed Section 66-3-805(C) as providing an independent basis supporting the existence of reasonable suspicion. According to the district court, Section 66-3-805(C) requires that "if a tail lamp is wired to be lighted, it must be lit when it is dark." Thus, reasoned the district court, because Deputy Martinez articulated facts that would support the conclusion that Defendant violated Section 66-3-805(C) because the upper, larger portion of one of Defendant's taillights was not lighted at 1:30 a.m. when it would have been dark,

4

there was reasonable suspicion to stop Defendant. Accordingly, the district court affirmed Defendant's convictions. Defendant now appeals to this Court.

**STANDARDS OF REVIEW**

**Statutory Interpretation**

{6}    "Statutory interpretation is an issue of law, which we review de novo." *State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50. "Our primary goal when interpreting statutory language is to give effect to the intent of the [L]egislature." *State v. Torres*, 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284. "We begin the search for legislative intent by looking first to the words chosen by the Legislature and the plain meaning of the Legislature's language." *State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064 (internal quotation marks and citation omitted). "If the language of the statute is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *State v. Chavez*, 2016-NMCA-016, ¶ 7, 365 P.3d 61 (internal quotation marks and citation omitted), *cert. granted*, 2016-NMCERT-001, 370 P.3d 474.

**Reasonable Suspicion**

{7}    "[W]e determine constitutional reasonableness de novo." *State v. Dopslaf*, 2015-NMCA-098, ¶ 7, 356 P.3d 559, *cert. denied*, 2015-NMCERT-008, 369 P.3d 368. "The appellate courts will find reasonable suspicion if the officer is aware of

specific articulable facts, together with rational inferences from those facts, that when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Id.* ¶ 8 (internal quotation marks and citation omitted). "A police officer may stop a vehicle if he has an objectively reasonable suspicion that the motorist has violated a traffic law." *State v. Vandenberg*, 2002-NMCA-066, ¶ 17, 132 N.M. 354, 48 P.3d 92, *rev'd on other grounds*, 2003-NMSC-030, 134 N.M. 566, 81 P.3d 19. "The subjective belief of the officer does not in itself affect the validity of the stop; it is the evidence known to the officer that counts, not the officer's view of the governing law." *State v. Hubble*, 2009-NMSC-014, ¶ 8, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). "[I]f an officer mistakenly believes that certain conduct violates one statute, but that conduct in fact violates a different statute, reasonable suspicion exists to stop the suspect despite the officer's mistake of law." *State v. Moseley*, 2014-NMCA-033, ¶ 15, 320 P.3d 517. "[W]e can ignore [an officer's] inappropriate reference to [the wrong statute] in the citation [he] prepare[s]. If his observations provided reasonable grounds to believe that another statute was being violated, . . . the stop was valid, regardless of his incorrect understanding of the law." *State v. Munoz*, 1998-NMCA-140, ¶ 9, 125 N.M. 765, 965 P.2d 349.

6

**DISCUSSION**

{8}     Defendant argues that both courts below erred in construing the requirements of the New Mexico Motor Vehicle Code, NMSA 1978, §§ 66-1-1 to -8-141 (1978, as amended through 2016), specifically Section 66-3-805(A) and (C) (tail lamps), and in determining whether the facts of this case gave rise to reasonable suspicion that Defendant was operating a vehicle in violation thereof. The State argues that Deputy Martinez's testimony supported a conclusion that he had reasonable suspicion to investigate a potential equipment violation under either Sections 66-3-805(A) or (C). The State also challenges the district court's conclusion that "there can be no violation of Section 66-3-801 with respect to defective tail[]lights without reference to Section 66-3-805" and argues that Section 66-3-801(A) provided an independent basis for a violation because Defendant's left taillight was "in such unsafe condition as to endanger any person." We consider the parties' arguments in turn and, ultimately, whether the facts in the record support the conclusion that Deputy Martinez had reasonable suspicion that Defendant was committing a traffic violation by driving a vehicle with a malfunctioning taillight.

**Section 66-3-805(A)**

{9}     Defendant argues that there are insufficient facts to support a finding that Deputy Martinez had reasonable suspicion that Defendant violated Section 66-3-

7

805(A) by driving a vehicle with a left taillight in which the larger upper bulb was not working. In order to have such reasonable suspicion, the officer must be able to articulate facts that would support a reasonable inference that the subject vehicle's taillights failed to "emit a red light plainly visible from a distance of [500] feet to the rear." Section 66-3-805(A); *see Dopslaf*, 2015-NMCA-098, ¶ 8. Here, Deputy Martinez conceded that he was never 500 feet or more away from Defendant's vehicle and that his opinion that Defendant's vehicle would not be visible at a distance of 500 feet was "an assumption based off of prior inciden[ts he has] had viewing vehicles." Both the metropolitan court and the district court agreed that Deputy Martinez's testimony failed to establish facts that would support reasonable suspicion of a violation based on Section 66-3-805(A). We, too, conclude that Deputy Martinez's speculative testimony as to whether Defendant's left taillight would or would not have been visible from 500 feet away is insufficient to establish reasonable suspicion. *See State v. Martinez*, 2015-NMCA-051, ¶ 15, 348 P.3d 1022 ("The constitutionality of a stop premised upon reasonable suspicion cannot be based upon speculation or conjecture."), *cert. granted*, 2015-NMCERT-005, 367 P.3d 441.

**Section 66-3-805(C)**

{10}    Defendant next argues that the district court improperly affirmed his convictions based on its interpretation of Section 66-3-805(C) as providing an

8

alternative basis for finding that Deputy Martinez had reasonable suspicion that Defendant was violating the law. Section 66-3-805(C) provides, in its entirety:

> Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of [50] feet to the rear. Any tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, shall be so wired as to be lighted whenever the headlamps or auxiliary driving lamps are lighted.

Divorcing the provision's second sentence from the first, the district court construed the second sentence to "mean that if a tail lamp is wired to be lighted, it must be lit when it is dark." Applying its interpretation of Section 66-3-805(C) to the facts, the district court noted that Deputy Martinez "articulated facts to support a reasonable suspicion [that] Defendant violated Section 66-3-801 because his tail[]lights were not lit as required by Section 66-3-805(C)."

{11} We conclude that the district court erred in interpreting Section 66-3-805(C). "When expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Starko, Inc. v. N.M. Human Servs. Dep't*, 2014-NMSC-033, ¶ 35, 333 P.3d 947 (internal quotation marks and citation omitted). Read in its entirety, Section 66-3-805(C) deals primarily, if not exclusively, with illumination of the rear registration plate. The first sentence requires that the license plate be visible 50 feet away. The second sentence, requiring any tail lamp or lamps to "be so wired as to be lighted" in

9

conjunction with headlamps, can best be understood as further requiring that the tail lamps and rear registration plate area illuminate simultaneously with headlamps. Because the gravamen of Section 66-3-805(C) is directed toward the license plate being illuminated and there was no testimony whatsoever regarding whether or not Defendant's license plate was, or any indication that the requisite wiring was unlinked to the headlamps, the district court improperly relied upon Section 66-3-805(C) to find that Deputy Martinez had reasonable suspicion of a violation based solely upon a partial failure of one taillight to fully illuminate.

{12}     At this juncture of the analysis, Defendant appears to argue that our inquiry ends and reversal is required because Deputy Martinez failed to articulate facts sufficient to support the existence of reasonable suspicion that Defendant had violated Section 66-3-805(A) or (C) and because there is no independent basis for a taillight violation under Section 66-3-801(A). We disagree and next consider the State's contention that defective taillights could constitute a violation of Section 66-3-801(A) even absent a per se violation of Section 66-3-805.

**Section 66-3-801(A)**

{13}     The State directs us to *Munoz*, where this Court construed Section 66-3-801(A) as "providing three alternative ways that a vehicle would be covered" by the statute:

> (1) it is in such unsafe condition as to endanger any person, (2) it does
> not contain those parts or is not at all times equipped with such lamps

10

> and other equipment in proper condition and adjustment as is required by Sections 66-3-801 through 66-3-887, or (3) it is equipped in any manner that is in violation of those sections.

*Munoz*, 1998-NMCA-140, ¶ 10 (internal quotation marks omitted). Given our previous analysis regarding Section 66-3-805—the only one of the sections referenced in the second and third alternatives under Section 66-3-801(A) applicable to taillights—we need only examine what constitutes a violation under the first alternative. Discussing the requirement that vehicles be safe, the *Munoz* Court stated that "it is a misdemeanor to drive on the highway a vehicle that is in such unsafe condition as to endanger any person." *Id.* (internal quotation marks omitted). While references to the equipment requirements of Sections 66-3-801 to -887 in the second and third alternatives establish what could be considered per se violations, *Munoz* explains that the language referring to vehicles "in such unsafe condition as to endanger any person" establishes an alternative way of violating the statute even where a vehicle's equipment is otherwise compliant with Sections 66-3-801 to -887. *Munoz*, 1998-NMCA-140, ¶ 10 (internal quotation marks omitted). Thus, Section 66-3-801 penalizes drivers who drive "a vehicle that is in an unsafe condition, regardless of whether it is being driven unsafely at the time. . . . It is the risk of harm, not its realization[,] that counts." *Munoz*, 1998-NMCA-140, ¶ 12. We understand Section 66-3-801(A) to effectively declare that a vehicle not equipped in compliance with the

11

requirements of Sections 66-3-801 to -887 is "unsafe" as a matter of law, and to also allow for situations where properly-equipped vehicles may nonetheless be considered "unsafe" where specific facts establish that the vehicle's "unsafe condition . . . endanger[s] any person." Section 66-3-801(A); *see, e.g.*, *Munoz*, 1998-NMCA-140, ¶ 11 (explaining that "not all windshield cracks obscure the driver's vision, at least not enough to constitute a safety hazard. But when they do constitute such a hazard, one who drives the vehicle creates a danger to the public that is prohibited by Section 66-3-801"). We thus agree with the State that the district court was incorrect to conclude that there can be no violation of Section 66-3-801(A) with respect to taillights without reference to Section 66-3-805. The question then becomes whether the facts in this case support an independent finding of a violation of Section 66-3-801(A) based on the "unsafe condition" provision.

{14}     The State argues that Deputy Martinez articulated a "general safety concern" that other drivers would not be able to see Defendant's vehicle when approaching from the rear because of Defendant's partial taillight malfunction. The State points to Deputy Martinez's testimony that he was concerned about the taillight not working properly "due to visibility," meaning that he thought the taillight was "not a large enough light to give other drivers proper awareness of the vehicle." This, the State claims, was sufficient evidence to support a finding that Defendant's vehicle was "in

such unsafe condition as to endanger any person" in violation of Section 66-3-801(A), thereby supporting the conclusion that Deputy Martinez had reasonable suspicion to stop Defendant. We disagree.

{15}    When asked to describe the traffic in the area at the time, Deputy Martinez stated, "[t]here were a few other vehicles, not within the immediate area, but there were a few other vehicles on the road. It was light but very little traffic, but there were other vehicles on the roadway." Deputy Martinez neither testified that he could not see Defendant's vehicle nor articulated facts from which it could be inferred that Deputy Martinez believed that either he, Defendant, or any other person was "endangered" by the condition of the left taillight. As with the insufficiency of Deputy Martinez's assumption that he would not have been able to see Defendant's taillights had he been more than 500 feet away, his testimony regarding what the State describes to be a "general safety concern" does not meet the constitutional requirement of a *particularized* suspicion to support its reasonableness. *See State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856 ("A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law."). While we agree with the State that it is possible for a vehicle's partially-malfunctioning taillight to give rise to reasonable suspicion of a violation of Section 66-3-801(A)'s "unsafe

13

condition" provision without reference to Section 66-3-805, we disagree that the factual record of this case supports that conclusion. *See State v. Anaya*, 2008-NMCA-020, ¶ 19, 143 N.M. 431, 176 P.3d 1163 (considering whether there was sufficient evidence to support reasonable suspicion of a violation of New Mexico's turn signal statute, Section 66-7-325(A), which requires the use of a turn signal "in the event any other traffic may be affected by [the vehicle's] movement[,]" and concluding that while "there could be cases in which the officer's vehicle could be considered affected traffic, . . . [i]n our case, the facts as articulated by the officer do not support violation of the turn signal law"), *abrogated on other grounds by Dopslaf*, 2015-NMCA-098.

**Whether Any Other Provision of the Motor Vehicle Code Provided a Reasonable Basis for the Stop**

{16}    "Our obligation as a reviewing court is to objectively judge the circumstances known to the officer to determine whether from the circumstances a reasonable person would believe that criminal activity occurred or was occurring." *State v. Goodman*, 2017-NMCA-010, ¶ 14, 389 P.3d 311. As a reviewing court, we consider the facts in the record, which Defendant does not dispute, and determine whether they could support reasonable suspicion of a violation of the Motor Vehicle Code on other grounds. *See Hubble*, 2009-NMSC-014, ¶ 29 (explaining that the reviewing court must still determine "if there were other facts surrounding the officer's decision to

14

conduct the traffic stop that could provide the objective grounds for reasonable suspicion"); *State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828 (holding that the appellate court will affirm the district court's decision if it is right for any reason, so long as it is not unfair to the appellant); *State v. Wilson*, 1998-NMCA-084, ¶ 17, 125 N.M. 390, 962 P.2d 636 ("Appellate courts usually apply the right for any reason basis of affirmance to strictly legal questions."). The ultimate question in a reasonable suspicion challenge is "whether the facts available to the officer warrant the officer, as a person of reasonable caution, to believe the action taken was appropriate." *Hubble*, 2009-NMSC-014, ¶ 8. Thus "in evaluating the propriety of a vehicle stop, the reasonable, experienced officer standard allows consideration of all facts that the officer knew at the time, whether or not the officer actually considered or later verbalized those factors as the reason for the stop." *State v. Vargas*, 1995-NMCA-091, ¶ 13, 120 N.M. 416, 902 P.2d 571. In other words, if there is another statutory basis for supporting Deputy Martinez's suspicion that Defendant was violating the law by driving a vehicle with a taillight whose larger upper bulb was not lit, the stop was reasonable.

{17} We begin by observing that operating a motor vehicle upon public highways in New Mexico is a privilege, not a right. *See, e.g.,* § 66-1-4.16(S) (defining "suspension" as used within the Motor Vehicle Code as meaning that "a person's

driver's license and *privilege to drive a motor vehicle* on the public highways are temporarily withdrawn" (emphasis added)); *In re Suazo*, 1994-NMSC-070, ¶ 31, 117 N.M. 785, 877 P.2d 1088 (Baca, J., specially concurring) (explaining that "operating a motor vehicle in New Mexico is a privilege, not a right"). Our Legislature has enumerated in the Motor Vehicle Code the many responsibilities and obligations that accompany that privilege. *See* §§ 66-1-1 to -8-141. As discussed above, in Sections 66-3-801 to -887 the Legislature set forth specific, technical, equipment-related requirements for all motor vehicles and provided in Section 66-3-801(A) that failure to comply with those requirements constitutes a misdemeanor. The Legislature further provided that drivers must ensure that the equipment on their vehicle is generally in "good working order" in order to operate the vehicle on public highways. Section 66-3-901 ("No person shall drive or move on any highway any motor vehicle . . . unless the equipment upon every vehicle is in good working order and adjustment as required in the Motor Vehicle Code.").

{18} We understand Section 66-3-901 to impose an additional requirement—that the equipment on driven vehicles function properly—above and beyond those specifically provided for in Sections 66-3-801 to -887. The dissent's criticism of this analysis mistakes that it expands upon the more specific taillight equipment requirements of Section 66-3-805. *See* Dissent ¶ 24. Section 66-3-805(A), however,

16

establishes specific visibility requirements separate and apart from Section 66-3-901's requirement that equipment on a vehicle, including within the vehicle's tail lamps, operate properly. In other words, the statutes reflect different purposes, do not overlap, operate independently from one another, and neither conflict with nor render a nullity the requirements of the other. Our analysis is further guided by the rule that the statute or statutes whose construction is in question are to "be read in connection with other statutes concerning the same subject matter[.]" *Quantum Corp. v. N.M. Taxation & Revenue Dep't*, 1998-NMCA-050, ¶ 8, 125 N.M. 49, 956 P.2d 848. While we acknowledge that Section 66-3-801(A) requires that all vehicles be equipped "in proper condition and adjustment as is required by Sections 66-3-801 through 66-3-887[,]" we conclude that the Legislature intended for the "good working order" requirement in Section 66-3-901 to be understood differently than Section 66-3-801(A)'s "proper condition" provision. *Cf. Am. Fed'n of State, Cty. & Mun. Emps. (AFSCME) v. City of Albuquerque*, 2013-NMCA-063, ¶ 5, 304 P.3d 443 ("Statutes must also be construed so that no part of the statute is rendered surplusage or superfluous[.]" (internal quotation marks and citation omitted)). A plain reading of Section 66-3-901 leads to the conclusion that the Legislature intends that all equipment on a vehicle be in not only working order but *good* working order, which requirement applies to not only Sections 66-3-801 to -887 but the entire Motor

17

Vehicle Code, of which Section 66-3-901 itself is a part. *See Duhon*, 2005-NMCA-120, ¶ 10 ("When the language in a statute is clear and unambiguous, we give effect to that language and refrain from further statutory interpretation.").

{19}    The uncontroverted facts, here, are that Deputy Martinez noticed that the left taillight on Defendant's vehicle was "not working properly." Specifically, the entire upper, larger portion of the taillight was not lit. In his statement of appellate issues to the district court, Defendant acknowledged that he "had one tail[light] that was not working at 100 per[]cent" and described the left taillight as "not working perfectly[.]" But applying Section 66-3-901, Defendant's contention that "the light, maybe a bulb, being out was not reason enough to pull over [Defendant]" is incorrect. A taillight bulb being burned out means that not all equipment on Defendant's vehicle was in working order, let alone *good* working order as required by Section 66-3-901. Thus, while a bulb being out may not have been enough to give rise to reasonable suspicion of a per se violation of Section 66-3-805(A) or (C) or an "unsafe condition" violation of Section 66-3-801(A), it was enough to establish reasonable suspicion of a violation of Section 66-3-901 to justify the ensuing stop. *See Hubble*, 2009-NMSC-014, ¶ 9 (explaining that "[t]he determination of whether [an officer] had reasonable suspicion to make [a] traffic stop does not hinge on whether [the d]efendant actually violated the underlying . . . statute"); *Moseley*, 2014-NMCA-033, ¶ 15; *Munoz*, 1998-NMCA-

18

140, ¶ 9. Ultimately, we conclude that it can hardly be considered unreasonable, as would Judge Garcia in this circumstance, for an officer to have reasonable suspicion that the law is being violated when he observes a malfunctioning light on a vehicle that is being driven on a public highway at night. *See* Dissent ¶¶ 28-29. But Section 66-3-901 does not require that an officer look askance in some instances in which a vehicle's equipment is not in good working order; rather, it requires vehicles' equipment to operate properly. To hold that an officer lacks reasonable suspicion to pull over a vehicle in New Mexico upon observation of a taillight bulb not illuminating would be markedly inconsistent with the purpose of the Motor Vehicle Code as applicable to the privilege that is driving in New Mexico. *See State v. Herrera*, 1974-NMSC-037, ¶ 6, 86 N.M. 224, 522 P.2d 76 (explaining that courts "will not construe statutes to achieve an absurd result or to defeat the intended object of the [L]egislature"). Because Deputy Martinez articulated specific facts indicating that the equipment on Defendant's vehicle was "not working properly"—i.e., was not in good working order—he had reasonable suspicion to believe that *a* traffic law, even if not the one he had in mind at the time or at trial, was being violated.

**Defendant's Claim Under the New Mexico Constitution**

{20}     In his reply brief, Defendant raises for the first time a claim under Article II, Section 10 of the New Mexico Constitution. Defendant couches his new argument as

19

responding to the State's citation in its answer brief to *Heien v. North Carolina*, ___ U.S. ___, 135 S. Ct. 530 (2014), as support for the proposition that the Fourth Amendment of the United States Constitution permits investigatory traffic stops by officers based on mistakes of law. We initially note that our case law is clear that the New Mexico Constitution affords no greater protection against investigatory traffic stops than does the Fourth Amendment. *See State v. Yazzie*, 2016-NMSC-026, ¶ 38, 376 P.3d 858 ("Although we have interpreted Article II, Section 10 to provide broader protections against unreasonable search and seizure than the Fourth Amendment in some contexts, we have never interpreted the New Mexico Constitution to require more than a reasonable suspicion that the law is being or has been broken to conduct a temporary, investigatory traffic stop[.]" (citation omitted)). We next note that *Heien* does not alter the basic reasonable suspicion analysis under the Fourth Amendment but merely provides that an officer's mistake of law, if reasonable, does not make a stop per se unreasonable and thus a violation of the Fourth Amendment. *See Heien*, 135 S. Ct. at 539 (explaining that "the mistake of law relates to the antecedent question of whether it was reasonable for an officer to suspect that the defendant's conduct was illegal. If so, there was no violation of the Fourth Amendment in the first place"). Defendant appears to argue that *Heien* creates a novel opportunity to consider whether the New Mexico Constitution affords more

20

expansive protection than the Fourth Amendment in the context of investigatory stops based on reasonable mistakes of law, thus potentially excusing his failure to preserve this challenge below. However, we need not reach that issue because the basis for our affirmance is not that Deputy Martinez made a reasonable mistake of law, making it unnecessary for us to consider whether Defendant should be permitted to make an unpreserved challenge in light of *Heien*. Moreover, we note that Defendant does nothing more to develop his argument than provide an explanation regarding why he did not raise this issue below and cite a single, distinguishable case for the proposition that "the New Mexico Constitution provides greater protection [regarding mistakes of law] as the exclusion of evidence illegally obtained does not rely upon deterrent effect or judicial integrity but rather vindicates the right of the individual and effectuates the law of the pending case." As is well-established practice in appellate review, we decline to speculate as to what the specific basis for Defendant's argument may be. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that appellate courts are under no obligation to review unclear or undeveloped arguments); *cf. Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them. . . .

21

This creates a strain on judicial resources and a substantial risk of error." (citation omitted)).

**CONCLUSION**

{21} Because Deputy Martinez had reasonable suspicion to stop Defendant's vehicle, we affirm his convictions.

{22} **IT IS SO ORDERED.**


_____

**J. MILES HANISEE, Judge**


**I CONCUR:**


_____

**STEPHEN G. FRENCH, Judge**


**TIMOTHY L. GARCIA, Judge (dissenting).**

**GARCIA, Judge (dissenting).**

{23} I respectfully dissent in this case. Section 66-3-901 did not provide an additional, independent criminal basis to violate the Motor Vehicle Code and thereby establish reasonable suspicion for Deputy Martinez to stop Defendant's vehicle. Because the majority's ruling is one of "first impression" and focuses on statutory construction to arrive at a right for any reason determination, my analysis shall address each distinct issue separately.

{24} First, both the majority and I could find no New Mexico case to support the position that Section 66-3-901 provides an independent basis to establish a "criminal violation" of the Motor Vehicle Code, either in general or specifically, and that the present state of our judicial precedent only recognizes criminal lighting violations that are based upon the specific lighting requirements set forth in Sections 66-3-801 to -805. *See* Majority Opinion, ¶¶ 16-19. The original predecessor to Section 66-3-901 was NMSA 1953, Section 64-21-1(a) (1953). Historically, a statutory requirement for safety inspections and certificates also existed and required a state approval certificate for all motor vehicles. *See* NMSA 1953, § 64-21-2 to -4 (1953).

{25} Under the statutory scheme involving an official certificate of inspection and approval, our Supreme Court recognized that civil liability could exist against the owner of an uncertified vehicle in order to establish a presumption of civil negligence

23

based upon the "defective condition of the brakes" and the requirements of Sections 64-21-1 to -8 (1953). *See Ferran v. Jacquez*, 1961-NMSC-072, ¶¶ 5, 7, 12-18, 68 N.M. 367, 362 P.2d 519 (recognizing the potential for civil liability against the owner of an uncertified vehicle, a misdemeanor offense under NMSA 1953, Section 64-20-1 (1953), when the owner's son lent the uncertified vehicle to another person and it quickly caused an accident due to defective condition of the brakes). However, our appellate courts have never recognized Section 64-21-1 (1953) and its present-day successor, Section 66-3-901, as the basis for establishing a misdemeanor crime arising from a lighting equipment violation that is more specifically addressed under the other provisions of the Motor Vehicle Code. Majority Opinion ¶¶ 17-18; *see State v. Creech*, 1991-NMCA-012, ¶ 12, 111 N.M. 490, 806 P.2d 1080 (recognizing that the detention of a motor vehicle "is forbidden" unless the officers have probable cause, or at least reasonable suspicion, to believe that the vehicle is "subject to seizure under applicable *criminal laws*" (emphasis added) (internal quotation marks and citation omitted)). As emphasized below, the majority's *sua sponte* criminal expansion of Section 66-3-901 on a right for any reason basis appears to be an error because it prioritizes this general statute over conflicting wording contained in the more specific lighting equipment statutes.

24

{26} Second, the right for any reason doctrine only applies when it is not unfair to the appellant. *See Gallegos*, 2007-NMSC-007, ¶ 26 (recognizing that the appellate courts "will affirm the trial court's decision if it was right for any reason so long as it is not unfair to the appellant"). In this case of first impression, it would be unfair to Defendant to expand Section 66-3-901 to establish an independent criminal basis for liability under the Motor Vehicle Code when Defendant had no opportunity to respond to the majority's new argument addressing the application of various principles of statutory construction. *See Freeman v. Fairchild*, 2015-NMCA-001, ¶ 29, 340 P.3d 610 (recognizing that it is unfair to apply the right for any reason doctrine where the appellant "had no opportunity . . . to respond to the unasserted argument").

{27} Third, by applying the appropriate rule of statutory construction, Section 66-3-901 would not establish an independent criminal basis for vehicle lighting violations under the Motor Vehicle Code. *See State v. Blevins*, 1936-NMSC-052, ¶ 12, 40 N.M. 367, 60 P.2d 208 (agreeing "that all of the canons of interpretation that apply to civil statutes apply to criminal statutes, . . . [including] the canon that they are to be strictly construed[, therefore] . . . the special statute controlled the general act, and the government had no election as to which it would proceed [to prosecute] under, the question being a judicial one"). The critical language in Section 66-3-901 is very

general and broadly worded, in that it restricts the driving of any motor vehicle on any highway "unless the equipment upon every vehicle is in good working order and adjustment *as required in the Motor Vehicle Code* [*Section 66-1-1*]." (Emphasis added.) The majority does not dispute that there are numerous vehicle equipment provisions set forth in the Motor Vehicle Code that address the specific conditions and functionality of various equipment on a vehicle, and the only specific statutory basis for misdemeanor lighting violations applicable in the present case are set forth in Sections 66-3-801 to -805. *See* Majority Opinion ¶¶ 8-18.

{28}    When applying the general/specific rule of statutory construction to the conflicting language between Sections 66-3-801 to -805 (the more specific statutes) and Section 66-3-901 (the general statute), the more specific statutory provisions would take precedence over the general statute so that the two statutes will be harmonized and each is given effect. *See Albuquerque Commons P'ship v. City Council of City of Albuquerque*, 2011-NMSC-002, ¶ 23, 149 N.M. 308, 248 P.3d 856 ("When faced with two provisions addressing the same topic, we resort to the familiar principle of statutory construction: a statute dealing with a specific subject will be considered an exception to, and give effect over, a more general statute." (internal quotation marks and citations omitted)); *State v. Santillanes*, 2001-NMSC-018, ¶ 18, 130 N.M. 464, 27 P.3d 456 (recognizing the general/specific rule of statutory

construction to apply in circumstances where "conduct in one group of statutes resulted in an irreconcilable conflict with the apparent criminalization of the same conduct in another statute"); *State v. Cleve*, 1999-NMSC-017, ¶ 25, 127 N.M. 240, 980 P.2d 23 (acknowledging that "the general/specific statute rule determines whether the Legislature intended to limit the discretion of the prosecutor in its selection of charges"). Here, the two statutes are factually in conflict because a vehicle with a taillight bulb that is not "in good working order" in violation of Section 66-3-901 can still emit sufficient lighting from other bulbs to be "plainly visible from a distance of five hundred feet to the rear" pursuant to Section 66-3-805(A). *See State ex rel. Madrid v. UU Bar Ranch Ldt. P'ship*, 2005-NMCA-079, ¶ 20, 137 N.M. 719, 114 P.3d 399 (recognizing that "the general/specific rule of statutory construction is only applicable when the two statutes are in conflict"); *State ex rel. Stratton v. Gurley Motor Co.*, 1987-NMCA-063, ¶ 9, 105 N.M. 803, 737 P.2d 1180 (emphasizing that the "specific statute controls over a general statute dealing with the same subject matter [and] . . . the same conduct . . . [where] conflicting statutory provisions [exist and the] . . . repugnancy cannot possibly be harmonized" (citations omitted)).

{29}     Because Deputy Martinez never determined whether Defendant's right taillight was sufficiently illuminated by the other bulb to be visible from a distance of 500 feet

27

to the rear, the majority has already determined that a violation of the more specific statute, Section 66-3-805(A), cannot stand even if a violation of the more general statute, Section 66-3-901 can be recognized. Majority Opinion ¶¶ 9, 18-19. As a result, the majority's "right for any reason" determination recognizing an ability to prosecute Defendant under Section 66-3-901 clearly violates the general/specific rule of statutory construction and effectively makes Section 66-3-805(A) irrelevant and incapable of harmonization with Section 66-3-901 in this case. *See Cleve*, 1999-NMSC-017, ¶ 18 (recognizing that the Legislature did not intend for the general criminal statute protecting cruelty to animals to apply to hunting activities governed by specific game and fish statutes); *Blevins*, 1936-NMSC-052, ¶¶ 7, 13 (reversing the defendant's conviction under the more general statute by applying "the rule [that] is stated as follows: Where there is one statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to give effect to a consistent legislative policy; but to the extent of any necessary repugnancy between them, the special statute, or the one dealing with the common subject matter in a minute way, will prevail over the general statute, unless it appears that the [L]egislature intended to make the general act controlling"); *State v. Parson*, 2005-NMCA-083, ¶¶ 14-19, 137 N.M. 773, 115 P.3d 236 (addressing the

28

continuing validity of the general/specific rule applied in *Cleve* and its continuing application to crimes involving free-roaming, wild animals). As a result, the Defendant was not subject to criminal prosecution under Section 66-3-901 of the Motor Vehicle Code. This general statute, requiring equipment in good working order, was not a proper "right for any reason" alternative basis to establish reasonable suspicion that a crime was being committed and authorize Deputy Martinez to stop Defendant's vehicle.

{30}    In conclusion, I do not concur with the result reached by the majority, and Defendant's conviction should be reversed.


_____

**TIMOTHY L. GARCIA, Judge**