902 P.2d 571

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Peter VARGAS, Defendant–Appellant.**

**No. 15611.**

Court of Appeals of New Mexico.

July 20, 1995.

Certiorari Denied Sept. 1, 1995.

Tom Udall, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Bruce Rogoff, Assistant Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BLACK, Judge.

Defendant was charged with possession of cocaine with intent to traffic, a second-degree felony under NMSA 1978, Section 30–31–20 (Repl.Pamp.1989). After his motion to suppress was denied, Defendant pleaded guilty to the lesser count of possession of cocaine. The suppression issue was preserved for appeal in the Plea and Disposition Agreement. We conclude that there was a sufficient factual basis for the police officer to entertain reasonable suspicion of criminal activity, and we affirm.

### I. *FACTS*

Officer Palos of the Las Cruces Police Department was given a special assignment, in lieu of his routine patrol duties, when he came on duty at 11:00 p.m. on the evening of February 17, 1993. Specifically, he was told to be on the lookout for a white car with a loud muffler that had been involved in a drive-by shooting that evening. Officer Palos drove around Las Cruces looking for that white car.

Shortly after midnight, Officer Palos observed two cars. A blue car was driving with a white car following closely behind. Officer Palos witnessed the white car turn off its headlights and proceed down the street. The white car stopped and then backed up to where the blue car had turned into what appeared to be an alley next to a residence. Officer Palos testified that the white car travelled, without lights, from the corner of the street, which covered a distance of about one and one-half city lots.

Officer Palos further testified that he thought the circumstances appeared suspicious and was not quite sure what was happening. Officer Palos decided to investigate and to "find out what was going on." He admitted he was not specifically thinking

about the drive-by shooting at that moment. Rather, he just saw a car operating without lights in a suspicious manner.

Officer Palos drove his patrol car to the alley and saw the white car parked with the engine running. Three persons were in the car. He turned his spotlight towards the car and called his dispatcher for a back-up unit. As soon as the spotlight was targeted at the white car, three men exited the car. The two passengers walked away from Officer Palos, and the driver walked towards him. Officer Palos got out of his car and told the three men to stop. They complied and walked towards Officer Palos, but blocked him from approaching the white car. The driver, later identified as Defendant, specifically told Officer Palos that he had no right to go near the car.

Realizing that "something wasn't right," and because the back-up unit had not yet arrived, Officer Palos testified his immediate concern was for his personal safety. He therefore ordered the three men to put their hands on the patrol car; they complied. In the course of the pat-down search, Officer Palos recognized Defendant. Since Defendant had previously been implicated in other drive-by shootings, Officer Palos then recalled that a drive-by shooting involving a white vehicle had been reported. Officer Palos realized that the white car from which Defendant had emerged fit the description for his special assignment.

During the pat-down search, Defendant had his left hand clenched. Defendant switched the item that was in his left hand to his right hand and then threw a packet across the hood of the patrol car. The packet was later determined to contain cocaine.

## II. STANDARD OF REVIEW

■ On appeal, we view the evidence in the light most favorable to sustain a trial court's finding of a lawful seizure. *State v. Affsprung*, 115 N.M. 546, 547, 854 P.2d 873, 874 (Ct.App.), *cert. denied*, 115 N.M. 545, 854 P.2d 872 (1993). A trial court's denial of a motion to suppress will not be disturbed if it is supported by substantial evidence viewed in this light. *State v. Galloway*, 116 N.M. 8, 9, 859 P.2d 476, 477 (Ct.App.1993). "To the

extent the witnesses' testimony differs as to the facts, ... it is the trial court's prerogative to determine the credibility of the evidence." *Affsprung*, 115 N.M. at 547, 854 P.2d at 874. Whether those facts comply with constitutional requirements is, however, a legal question reviewed by the appellate court on a *de novo* basis. *Id.; State v. Jones*, 114 N.M. 147, 150–51, 835 P.2d 863, 866–67 (Ct.App.), *cert. denied*, 114 N.M. 62, 834 P.2d 939 (1992).

## III. THE ACTIONS OF OFFICER PALOS WERE LEGALLY PROPER

■ The United States and New Mexico Constitutions guarantee the right of the people to be free from "unreasonable searches and seizures." U.S. Const. amend. IV; N.M. Const. art. II, § 10. "A police officer 'seizes' a person and subjects him to a 'search' when the officer takes hold of the person and pats down the outer surfaces of his clothing...." 5 Mark S. Rhodes, *Orfield's Criminal Procedure Under the Federal Rules* § 41:15, at 613 (2d ed. 1987); *cf. State v. Reynolds*, 119 N.M. 383, 386, 890 P.2d 1315, 1318 (1995) ("For a police action to be characterized as a 'search', the officer must somehow search or take an object in which a person has a reasonable expectation of privacy.").

■ Whether a violation of the guarantee against unreasonable search and seizure has occurred depends upon an objective assessment of a police officer's actions based on all the facts confronting the officer, not on the officer's actual state of mind. *See Maryland v. Macon*, 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2782–83, 86 L.Ed.2d 370 (1985). "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). The absence of a subjective recognition of specific suspicious factors, then, cannot defeat an officer's objectively reasonable action. *See United States v. Bonner*, 874 F.2d 822, 829 (D.C.Cir.1989); *Berge v. Commissioner of*

*Pub. Safety,* 374 N.W.2d 730, 733 n. 1 (Minn. 1985); *see also* 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.3, at 153 (2d ed. Supp.1995).

Defendant argues that, at the time Officer Palos engaged his lights and spotlighted Defendant's car, he "did not connect [Defendant's] white car to his special assignment to look for a white car with a loud muffler. He 'wasn't sure' what was happening, but thought it was suspicious for a car to turn off its lights and turn into a residence." We need not decide whether the color of the car coupled with what the officer had been told to look for would, by itself, constitute reasonable suspicion. This information was complemented by Officer Palos' own observations that the car was operating on a public street without lights. Every vehicle being operated on a public road at night is required to "display lighted lamps." NMSA 1978, § 66–3–802 (Repl.Pamp.1994). Because operating a vehicle without lights is a violation of the Motor Vehicle Code, NMSA 1978, Sections 66–1–1 to –8–139 (Repl.Pamp.1994), Officer Palos' observation of this violation alone provided a sufficient basis for him to stop the car. *See State v. Mann,* 103 N.M. 660, 663–64, 712 P.2d 6, 9–10 (Ct.App.1985), *cert. denied,* 103 N.M. 740, 713 P.2d 556 (1986); *see also United States v. Garcia,* 23 F.3d 1331, 1334 (8th Cir.1994) (observation of a traffic violation provides probable cause to stop a vehicle); *State v. Stadsvold,* 456 N.W.2d 295, 296 (N.D.1990) ("It is well settled that traffic violations, even if considered common or minor, constitute prohibited conduct and, therefore, provide officers with requisite suspicion for conducting investigatory stops."). Again, the fact that the officer later articulated the wrong reason for stopping the car does not negate the adequate legal foundation created by his observance of a traffic violation. *See United States v. Lewis,* 910 F.2d 1367 (7th Cir.1990).

Citing *State v. Franks,* 119 N.M. 174, 889 P.2d 209 (Ct.App.1994), Defendant argues that the State cannot now rely on the car's failure to display lights as a traffic violation because this argument was not specifically advanced in the trial court. Defendant argues that we should follow *Franks,* which, according to Defendant, "refused to affirm the trial court's suppression of evidence on a ground, not presented below, when it was too 'fact-dependent.' " The issue in *Franks,* however, was whether, after we had determined that the trial court erred in suppressing evidence under SCRA 1986, 11–403 (Repl.1994), the defendant should be allowed to argue on appeal that the evidence would have been excludable in any event under a different rule, SCRA 1986, 11–504 (Repl.1994). *Franks,* 119 N.M. at 177, 889 P.2d at 212. We recognized in *Franks* that "it would be improper [for this Court] to make a finding on a fact relevant only to an issue that had not been raised below, because the appellant lacked an opportunity to present admissible evidence relating to the fact." *Id.*

The present record is, however, different than that in *Franks,* and we rely on it for a different purpose. In the present case, Defendant does not argue that there was other admissible evidence he could have offered had he known that the operation of the car without lights would be considered as a proper basis for the initial stop. (Defendant's theory below was that Defendant lived at the address next to the alley where the white car was stopped, but the car was not his and he was not driving it.) Furthermore, it is undisputed that Officer Palos saw a car operating on a public street without lights after midnight, and Defendant did not object to this evidence. Unlike *Franks,* we do not consider a new theory supporting the exclusion of evidence. Nor do we create a new legal theory and extract evidence from the record to support that theory. Rather, we recognize that, in evaluating the propriety of a vehicle stop, the reasonable, experienced officer standard allows consideration of all facts that the officer knew at the time, whether or not the officer actually considered or later verbalized those factors as the reason for the stop.

## IV.  *CONCLUSION*

We agree with the trial court that Officer Palos set forth sufficient grounds for the stop and his subsequent actions. We agree with the trial court. Thus, we do not rely on the

arguments regarding affirmance based on the right-for-the-wrong-reason principle. *See Westland Dev. Co. v. Romero*, 117 N.M. 292, 293, 871 P.2d 388, 389 (Ct.App.1994) ("An appellate court will affirm a lower court's ruling if right for any reason.").

The totality of the circumstances was sufficient to allow the investigation performed by Officer Palos to withstand constitutional scrutiny. The decision of the trial court is affirmed.

IT IS SO ORDERED.

BOSSON and WECHSLER, JJ., concur.