1998-NMCA-140

965 P.2d 349

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Nathaniel MUNOZ, Defendant–Appellee.**

No. 18194.

Court of Appeals of New Mexico.

Aug. 27, 1998.

Tom Udall, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, for Plaintiff-Appellant.

Jane Bloom Yohalem, Santa Fe, for Defendant-Appellee.

## OPINION

HARTZ, Chief Judge.

█ {1} The State appeals a district court order suppressing cocaine seized from Defendant's person after a deputy sheriff stopped a vehicle in which Defendant was a passenger. The deputy stopped the vehicle because of a cracked windshield. The district court ruled the stop unlawful. We hold that the stop was lawful if the deputy had reasonable grounds to believe that the crack rendered the vehicle dangerous to operate on the highway. Because the district court apparently believed that the stop was lawful only if the deputy observed bad driving behavior, we reverse the order suppressing the evidence and remand for a determination of whether the deputy had the necessary reasonable grounds for the stop.

## BACKGROUND

{2} The evidence regarding the traffic stop consists of the testimony of Doña Ana County Deputy Sheriff Garth Pirtle and two photographs of the vehicle. We summarize the essential portions of the testimony: At about 1:05 a.m. on July 18, 1996, Pirtle saw a Honda Accord traveling east on Amador Avenue in Las Cruces. The Honda's windshield was cracked in the center in a "pretty big" circle. (The photographs show a "star" approximately eighteen inches to two feet in diameter.) Believing that the cracked windshield was a safety violation, Pirtle stopped the vehicle. It was unusual for him to stop a vehicle because of a cracked windshield—he estimated that he had stopped only five other vehicles for this reason during his 2½ years as a deputy—but he was not busy with other calls at the time. Pirtle advised the driver, Karen Biscaino, that he had stopped her because of the cracked windshield. She told him that she did not own the car. She also asserted that she could see out of the windshield.

{3} While speaking with Biscaino, Pirtle observed some empty beer bottles and two or three full beer bottles on the rear floorboard of the Honda. He asked Biscaino for her driver's license and requested identification from Defendant, who was a passenger. The reason he asked for Defendant's identification was to determine whether Defendant was old enough to drink alcoholic beverages lawfully. (There is no evidence in the record regarding Defendant's age or how old he looked, although his attorney asserted during argument on the motion to suppress that Defendant "is, what, 30 years old here.")

{4} Pirtle then returned to his patrol car to write a citation and to determine whether Biscaino or Defendant was wanted by law enforcement authorities. He issued a citation for a violation of "66-7-357 Obstructed View." In the "Essential Facts" portion of the citation form he wrote: "Observed vehicle w/ broken windshield in center travelling E/B on Amador." While Pirtle was preparing the citation, the dispatcher advised him that there was a warrant for Defendant's arrest. Pirtle arrested Defendant and discovered the cocaine during a search incident to arrest.

{5} After Defendant was indicted for possession of cocaine, he filed a motion to suppress. At the hearing on the motion his attorney contended that the stop was unlawful and that Pirtle had no right to request his identity even if the stop was valid. With respect to the stop, defense counsel pointed out that the statute noted on the citation— NMSA 1978, § 66-7-357 (1978)—was inapplicable because it concerned only interference with driving caused by passengers in the vehicle. She then argued:

There is no objective reason to believe this driver—that there is a safety problem here, because the driver is not driving in a way that would be consistent with that kind of inference. Did the car have a cracked windshield? Sure. Is that against the law? No, it is not against the law. There is just nothing against the law about driving with a cracked windshield.

She suggested that the deputy's only reason for the stop was that it was a slow night and he wanted "to stop someone and I.D. them."

{6} In response the prosecutor relied on NMSA 1978, § 66–3–801(A) (1991), which makes it a misdemeanor to drive "any vehicle . . . which is in such unsafe condition as to endanger any person." He argued that Pirtle could have reasonably believed that the statute was being violated because the driver "could not adequately see to the right of the vehicle." He also cited *Apodaca v. State, Taxation & Revenue Dep't*, 118 N.M. 624, 626, 884 P.2d 515, 517 (Ct.App.1994), for the proposition that "a police officer may stop a vehicle for a specific, articulable safety concern, even in the absence of reasonable suspicion that a violation of law has occurred or is occurring." On rebuttal, defense counsel argued that "there was no legitimate safety concern because there was no objective reason for the officer to believe that the driver's view was obstructed or that her ability to—based on his own testimony that there was nothing the matter with his [sic] driving."

{7} The district court ruled from the bench as follows:

> There are several statements made by Deputy Pirtle that I think are relevant. First, he indicated that he did not observe any bad driving behavior. He also indicated that the stop was based on how busy he is, the stop for a broken windshield. It is based on how busy he is. . . .
>
> . . . I initially find that the stop was unlawful. He had no objective evidence to believe that any criminal activity was occurring or had occurred. There was no evidence of unsafe driving. The statute that he cited the driver for, 66–7–357, is unrelated to the stop, and actually has absolutely nothing to do with the broken windshield as indicated by [defense counsel]. And for those reasons, I find that the Defendant's motion to suppress should be granted.

Later the court filed findings of fact and conclusions of law. The findings regarding the grounds for the stop were as follows:

> 2. Because he was having an otherwise slow night, Deputy Pirtle was patrolling for traffic violations.

> 3. As the front of his unit pulled even with the rear of the Honda Accord, Deputy Pirtle noticed that the front windshield of the car had a crack centered below the rearview mirror and radiating outward.

> 4. Deputy Pirtle did not observe any bad driving behavior and had no reason to stop the vehicle except for the cracked windshield.

> . . .

> 10. While waiting for the return of the warrants check, Deputy Pirtle issued citation number 07107106166670 to the driver, advising her that she was in violation of Section 66–7–357 "Obstructed View" NMSA, 1978 Comp.

> 11. In the "Essential Facts" portion of the citation, Deputy Pirtle wrote, "observed vehicle w/broken windshield in center travelling [sic] E/B on Amador".

> . . .

> 13. In approximately 2½ years as a deputy sheriff, Deputy Pirtle had made five (5) other stops of vehicles with broken windshields.

> 14. Deputy Pirtle had not read the text of Section 66–7–357 NMSA 1978 Comp. prior to issuing this citation on July 18, 1996 and did not know the essential elements of the offense.

There were seven pertinent conclusions of law:

> 2. The standard for the validity of the stop is whether the officer had a reasonable suspicion of criminal activity based on specific, articulable facts. *State v. Galvan*, 90 N.M. 129, 560 P.2d 550 (Ct.App.1977). The stop was not supported by a reasonable suspicion of criminal activity.

> 3. Section 66–7–357 NMSA (1978) does not support the issuance of a citation for a cracked windshield.

> 4. The "essential facts" set forth in the citation do not substantiate a charge for a traffic violation.

> 5. There is no objective evidence of unsafe driving to support an inference that the cracked windshield created an unsafe condition as to endanger any person.

6. The stop was not based on an observed violation of the Motor Vehicle Code.

7. Based on objective criteria, the cracked windshield in this case did not rise to the level of a specific, articulable safety concern to justify the stop.

8. The stop was arbitrary, random and unlawful.

The court's conclusions did not address whether requesting Defendant to identify himself would have been lawful if the initial stop had been valid.

*DISCUSSION*

■■■ {8} The validity of the stop is governed by New Mexico Constitution Article II, Section 10, and the Fourth Amendment to the United States Constitution, which has been made applicable to state and local governments by the Fourteenth Amendment. *See Jaramillo v. City of Albuquerque,* 1998–NMCA–062, ¶ 5, 125 N.M. 194, 958 P.2d 1244. Both the state and federal constitutions forbid "unreasonable searches and seizures." *See* U.S. Const. amend. IV; N.M. Const. art. II, § 10; *State v. Vargas,* 120 N.M. 416, 418, 902 P.2d 571, 573 (Ct.App.1995). Law enforcement officers can constitutionally stop a motor vehicle "if they have a reasonable suspicion that the law has been or is being violated." *State v. Flores,* 1996–NMCA–059, ¶ 7, 122 N.M. 84, 920 P.2d 1038. "Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *Id.* In addition, in the exercise of their "community caretaking functions to enhance public safety[, they may] stop vehicles for a specific, articulable safety concern." *State v. Reynolds,* 117 N.M. 23, 25, 868 P.2d 668, 670 (Ct.App.1993), *rev'd in part on other grounds,* 119 N.M. 383, 890 P.2d 1315 (1995).

■■ {9} The test is an objective one. The subjective belief of the officer does not in itself affect the validity of the stop; it is the evidence known to the officer that counts, not the officer's view of the governing law. *See State v. Martinez,* 1997–NMCA–048, ¶ 15, 123 N.M. 405, 940 P.2d 1200; *Vargas* 120 N.M. at 418–19, 902 P.2d at 573–74. Accordingly, we can ignore the inappropriate reference to Section 66–7–357 in the citation

Pirtle prepared. If his observations provided reasonable grounds to believe that another statute was being violated, or that the vehicle constituted a safety hazard, the stop was valid, regardless of his incorrect understanding of the law.

{10} We begin by discussing the statute relied upon by the State—Section 66–3–801(A). We will then address how the statute applies in this case. Section 66–3–801(A) states:

> Except as otherwise provided in this section, it is a misdemeanor for any person to drive or move or for the owner to cause or permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person or which does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as is required by Sections 66–3–801 through 66–3–887 NMSA 1978 or which is equipped in any manner that is in violation of those sections or for any person to do any act forbidden or fail to perform any act required under those sections.

We read the statute as providing three alternative ways that a vehicle would be covered: (1) it "is in such unsafe condition as to endanger any person," (2) it "does not contain those parts or is not at all times equipped with such lamps and other equipment in proper condition and adjustment as is required by Sections 66–3–801 through 66–3–887," or (3) it "is equipped in any manner that is in violation of those sections." Consequently, it is a misdemeanor to drive on the highway a vehicle that "is in such unsafe condition as to endanger any person."

{11} A cracked windshield could render a vehicle unsafe to drive. We note that NMSA 1978, Section 66–3–846(A) (1997), makes it a misdemeanor to "drive any motor vehicle with any sign, poster or other nontransparent material upon or in the front windshield, windows to the immediate right and left of the driver or in the rearmost window if the latter is used for driving visibility. . . ." Although that statute does not apply in this case—cracks in a windshield are flaws in the windshield glass itself, not "nontransparent

material upon or in" a windshield—the statute indicates a legislative judgment that it is unsafe to drive a vehicle when the driver's vision through the windshield is obscured. Of course, not all windshield cracks obscure the driver's vision, at least not enough to constitute a safety hazard. But when they do constitute such a hazard, one who drives the vehicle creates a danger to the public that is prohibited by Section 66–3–801. The Indiana Court of Appeals has ruled that a cracked windshield can violate a statute whose operative language is identical to ours. *See State v. Pease,* 531 N.E.2d 1207, 1210 (Ind.Ct.App.1988) (statute forbids operation on highway of a vehicle "which is in such an unsafe condition as to endanger any person"); *cf. People v. Jones,* 207 Ill.App.3d 30, 151 Ill.Dec. 969, 565 N.E.2d 240 (Ill.Ct.App. 1990) (statute prohibits driving vehicle when defective windshield impairs driver's vision); *People v. Cerda,* 819 P.2d 502 (Colo.1991) (en banc) (no reasonable suspicion of violation of obstructed-windshield statute).

 {12} Under our interpretation of Section 66–3–801(A), the law is violated by driving a vehicle that is in an unsafe condition, regardless of whether it is being driven unsafely at the time. As expressed by the State in its brief in chief, the State is not limited to "cit[ing] drivers for safety violations as the wreckage is being towed away." It is the risk of harm, not its realization that counts. It appears that the district court did not interpret Section 66–3–801(A) as we do. But we do not defer to the district court's view of the law; on matters of statutory interpretation we conduct de novo review. *See State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995).

{13} Given that Section 66–3–801(A) makes it a crime to drive an unsafe vehicle, any authority possessed by Pirtle in his "community caretaking" capacity, *see Reynolds,* 117 N.M. at 25, 868 P.2d at 670, would merely duplicate his authority to investigate crime in the context of this case. Hence, we need not further address the State's argument based on the *Reynolds* line of authority.

 {14} We now turn to the application of the law to the facts of this case. The determinative question is whether Pirtle's observation of the Honda's windshield provided reasonable grounds to believe that the crack in the windshield made the vehicle unsafe to drive. This is a question for the finder of fact, not an appellate court. The record on appeal, including the transcript of testimony and the two photographs of the windshield, cannot establish as a matter of law whether Pirtle's view of the windshield before he stopped the Honda provided him with reasonable grounds for the stop. As this court has stated many times, we defer to the district court's findings of fact, if they are supported by the evidence. *See, e.g., Vargas,* 120 N.M. at 418, 902 P.2d at 573.

 {15} The problem for us here is that it does not appear that the district court based its ruling on a determination regarding the safety hazard of the crack in the windshield. The court entered no findings with respect to whether the crack in the windshield obstructed, or could appear to Pirtle to obstruct, the driver's vision. The only findings mentioning the windshield were the following:

3. As the front of his unit pulled even with the rear of the Honda Accord, Deputy Pirtle noticed that the front windshield of the car had a crack centered below the rearview mirror and radiating outward.

4. Deputy Pirtle did not observe any bad driving behavior and had no reason to stop the vehicle except for the cracked windshield.

11. In the "Essential Facts" portion of the citation, Deputy Pirtle wrote, "observed vehicle w/broken windshield in center travelling [sic] E/B on Amador".

{16} Also, the district court's conclusions of law do not persuade us that it made the requisite findings. To be sure, several of the conclusions would be consistent with a finding that Pirtle did not have reasonable grounds to believe that the cracked windshield constituted a safety hazard:

4. The "essential facts" set forth in the citation do not substantiate a charge for a traffic violation.

5. There is no objective evidence of unsafe driving to support an inference that the cracked windshield created an unsafe condition as to endanger any person.

6. The stop was not based on an observed violation of the Motor Vehicle Code.

7. Based on objective criteria, the cracked windshield in this case did not rise to the level of a specific, articulable safety concern to justify the stop.

Perhaps we could indulge a presumption that the district court must have found that Pirtle's observations did not constitute reasonable grounds for believing that the windshield crack rendered the Honda dangerous to drive. But, in our view, that would constitute too great a stretch in favor of affirmance. These quoted conclusions, which were adopted verbatim from Defendant's proposed conclusions, are equally consistent with the view that Pirtle had no right to stop the vehicle unless he observed unsafe driving. And this was the view expressed by the district court in its oral ruling:

I initially find that the stop was unlawful. [Pirtle] had no objective evidence to believe that any criminal activity was occurring or had occurred. There was no evidence of unsafe driving. The statute that he cited the driver for, 66–7–357, is unrelated to the stop, and actually has absolutely nothing to do with the broken windshield as indicated by [defense counsel]. And for those reasons, I find that the Defendant's motion to suppress should be granted.

{17} Thus, we believe that the district court based its ruling on the incorrect view that Pirtle had the right to stop the Honda only if he observed unsafe driving. If we have misconstrued the district court's decision, the matter can be clarified on remand.

{18} We reverse the order suppressing the evidence seized from Defendant and remand to the district court for further proceedings. First, the district court must determine whether Deputy Sheriff Pirtle had reasonable grounds to believe that the crack in the windshield rendered the Honda "in such unsafe condition as to endanger any person." If the district court finds that there was no such reasonable suspicion, the evidence should be suppressed. If the court finds that there was reasonable suspicion, it must then address Defendant's contentions regarding Pirtle's request for identification from Defendant. Although the parties have both argued the identification issue on appeal, it should be decided in the first instance by the district court.

*CONCLUSION*

{19} The order suppressing evidence is reversed and this cause is remanded to the district court for further proceedings in conformity with this opinion.

{20} **IT IS SO ORDERED.**

FLORES and WECHSLER, JJ., concur.