This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-38243

**STATE OF NEW MEXICO,**

        Plaintiff-Appellant,

v.

**JOSE ESPINOZA,**

        Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Conrad F. Perea, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Charles D. Agoos Assistant Appellate Defender
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** The State appeals the district court's order granting Jose Espinoza's (Defendant) motion to suppress evidence discovered following a traffic stop. The State argues the district court failed to consider the totality of the circumstances and instead focused on only one factor to determine that officers did not have reasonable suspicion to initiate a traffic stop. We reverse.

## BACKGROUND

**{2}**    The following factual background is based on the testimony of Deputy Luis Ruiz, the only witness to testify during the district court hearing on Defendant's motion to suppress, and exhibits reviewed during that hearing. Early Saturday morning, August 25, 2018, deputies of the Doña Ana County Sherriff's Department received a be-on-the-look-out (BOLO) alert for a suspect that fled the scene of a stabbing on Golf Course Road in Anthony, New Mexico. The BOLO advised that the male suspect wore a white shirt, had neck tattoos, and fled the scene in a grey Honda Civic with a Texas license plate heading east toward the desert.

**{3}**    Approximately thirty-five to forty minutes after the BOLO's issuance and while attending to a stop involving a different vehicle on Anthony Drive, Deputy Ruiz and Sergeant John Signore, saw a silver Honda heading southbound that matched the description in the BOLO. Sergeant Signore attempted to flag the silver Honda down but the vehicle failed to stop, prompting Sergeant Signore to yell, "Hey!" then direct the deputies on scene "to stop that vehicle." Deputy Ruiz then entered his patrol unit, activated his emergency lights and siren and the vehicle stopped within a minute thereafter. Although the driver of the second vehicle, Defendant, was not the subject of the BOLO, based on subsequent information acquired as a result of the stop, he was arrested and charged in magistrate court with driving while under the influence of alcohol.

**{4}**    Defendant filed a motion to suppress all evidence obtained during the course of the stop, arguing that Deputy Ruiz lacked reasonable suspicion to initiate the stop and thereby violated his right to be secure against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. The magistrate denied the motion and a jury convicted Defendant of driving under the influence of alcohol.

**{5}**    On appeal to the district court, Defendant again filed a motion to suppress asserting that the officer lacked reasonable suspicion to stop his vehicle in violation of his rights under Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. Defendant attached a call for service detail report (CAD Report), related to the stabbing and a Google Map print out showing the distance and location between 828 Golf Course Road and 800 Anthony Drive in Anthony, New Mexico, to his motion.

**{6}**    In addition to Deputy Ruiz's testimony, during the hearing on the motion to suppress, the State played a portion of Detective Ruiz's dash cam video which recorded his stop of the vehicle Defendant was driving. Defense counsel also showed Deputy Ruiz a copy of the Google Map attached to Defendant's motion to suppress, a copy of which the district court also had. Deputy Ruiz confirmed that the location of 828 Golf Course Road on the Google Map was the location of the stabbing for which the BOLO had been issued, that the location of his first traffic stop, where he saw Defendant's vehicle traveling southwest, was marked on the Google Map at 800 Anthony Drive, and that the BOLO reported the suspect fled east towards the desert. Deputy Ruiz also

stated that the area depicted in the Google Map, particularly the desert to the east, has multiple entries and exits which eventually reconnect to Anthony Drive.

{7} When asked if it was reasonable to stop Defendant thirty-seven minutes after the BOLO was issued, Deputy Ruiz responded that he believed it was and explained that in his training and experience suspects might hide and wait for emergency lights and sirens to dissipate before fleeing again. The district court asked Deputy Ruiz if he stopped the [second vehicle] because his sergeant said, "Hey stop that vehicle." Deputy Ruiz responded that it was "one factor" but he also understood why his sergeant wanted the vehicle pulled over and later reaffirmed that the second vehicle matched the description of the vehicle provided in the BOLO.

{8} At the conclusion of the hearing the district court ruled that Detective Ruiz lacked reasonable suspicion to stop Defendant's vehicle and granted Defendant's motion to suppress. The district court explained its ruling from the bench as follows:

> First of all, it is my belief that you had particularized suspicions that you articulated well. My issue is this; there was too much time from the BOLO being given to the second traffic stop. That time gap, in my opinion is too much. . . . Secondly, what bothers me also is Sergeant Signore's order "Hey stop that vehicle." I believe you knew why, I do believe you. It's just that order would lead me to believe that my Sergeant is ordering to stop that vehicle and then I am asking why? Do I believe your work was good? Yes, it was. There is no doubt.

The district court took judicial notice of the area where the stop occurred, finding that the distance between the stabbing and the traffic stop was a mile and expressed disbelief that the suspect sought in the BOLO hid after fleeing. Given the one-mile distance between the stabbing and the traffic stop, the district court stated that thirty-seven to forty minutes between the BOLO and the traffic stop was—in its opinion— unreasonable. The court emphasized that although it believed the facts were otherwise good, "the time factor was the biggest factor." The district court did not issue written findings or conclusions of law in its order granting Defendant's motion to suppress evidence. This appeal followed.

**STANDARD OF REVIEW**

{9} "Because suppression of evidence is a mixed question of law and fact, we apply a two-part review to the district court's denial of the motion to suppress." *State v. Scharff*, 2012-NMCA-087, ¶ 8, 284 P.3d 447. "[W]e review the facts in the light most favorable to the prevailing party, deferring to the district court's factual findings so long as substantial evidence exists to support those findings." *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Jean-Paul*, 2013-NMCA-032, ¶ 4, 295 P.3d 1072 (internal quotation marks and citation omitted). "Our review of a district court's determination of whether reasonable suspicion

existed is de novo [.]" *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. In doing so we review "the totality of the circumstances and must avoid reweighing individual factors in isolation." *State v. Martinez*, 2018-NMSC-007, ¶ 12, 410 P.3d 186.

**DISCUSSION**

**{10}** Article II, Section 10 of the New Mexico Constitution and the Fourth Amendment to the United States Constitution control the validity of investigative stops. *See State v. Muñoz*, 1998-NMCA-140, ¶ 8, 125 N.M. 765, 965 P.2d 349. A police officer "may make an investigatory stop in circumstances that do not rise to probable cause for an arrest if they have a reasonable suspicion that the law has been or is being violated." *State v. Flores*, 1996-NMCA-059, ¶ 7, 122 N.M. 84, 920 P.2d 1038 (citing *Terry v. Ohio,* 392 U.S. 1, 21-22 (1968)). "Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *Flores*, 1996-NMCA059, ¶ 7. Reasonable suspicion in New Mexico is analyzed through use of an objective test. *State v. Hubble*, 2009-NMSC-014, ¶ 23, 146 N.M. 70, 206 P.3d 579. Therefore, the subjective belief of the officer does not in itself affect the validity of the stop; it is the evidence known to the officer that matters. *Muñoz*, 1998-NMCA-140, ¶ 9.

**{11}** As noted, the district court did not issue written findings of fact in this case. "This is a regular occurrence when we review decisions on motions to suppress evidence in criminal cases." *State v. Jason L.*, 2000-NMSC-018, ¶ 11, 129 N.M. 119, 2 P.3d 856. In such circumstances we "employ presumptions and as a general rule, we will indulge in all reasonable presumptions in support of the district court's ruling." *Id.* (internal quotation marks and citation omitted). However, "without an indication on the record that the district court rejected the uncontradicted evidence, we presume the court believed all uncontradicted evidence." *Id.*

**Reasonable Suspicion for The Stop of Defendant's Vehicle**

**{12}** The district court discussed its ruling at length during the hearing. We therefore look to the court's discussion for insight to its reasoning supporting its suppression ruling. *See generally Burris-Awalt v. Knowles*, 2010-NMCA-083, ¶ 10, 148 N.M. 616, 241 P.3d 617 ("[W]hile all of a district court's findings of fact and conclusions of law should typically be reduced to writing and entered along with the final order, failure to do so is not fatal if the findings and conclusions are part of the transcript on appeal.").

**{13}** The district court found that Deputy Ruiz's articulation of facts in support of his particularized suspicion for stopping Defendant's vehicle were "clear," "accurate," and "good." It is undisputed that the BOLO in this case described the suspect vehicle as a grey Honda Civic with a Texas license plate heading east toward the desert. Deputy Ruiz testified that the vehicle Defendant was driving matched the description of the vehicle described in the BOLO, that is, a silver Honda with Texas license plates. It is also undisputed that Deputy Ruiz saw the vehicle Defendant was driving approximately a mile from the reported stabbing scene. These facts along with reasonable inferences drawn from them, support the district court's determination that Deputy Ruiz had

particularized suspicion for stopping Defendant's vehicle. *See State v. Lovato*, 1991-NMCA-083, ¶¶ 11, 14, 112 N.M. 517, 817 P.2d 251 (holding that officers had a sufficient basis for stopping a white Impala driving away from Martineztown where BOLO described vehicle suspected in a drive-by-shooting in Martineztown as a white Impala).

**{14}** Despite finding that Deputy Ruiz had a particularized suspicion for stopping Defendant's vehicle, the district court focused on the length of time between the BOLO and the traffic stop, "it's just that time factor that bothers me" and concluded that the stop of Defendant's vehicle was unreasonable. Relevant to this finding, the district court took judicial notice of the one mile distance from the stabbing and stop of Defendant's vehicle and expressed its opinion that the stabbing suspect did not hide after fleeing. While we agree that there is evidence to support the district court's findings of an approximate one mile distance between the stabbing and stop of the vehicle Defendant was driving and that the delay between the BOLO and stop of Defendant's vehicle was between thirty-seven and forty minutes, there is no evidence in the record supporting the district court's belief that the stabbing suspect did not hide after fleeing, nor do we believe that such a determination is relevant to the issue before the court.

**{15}** Under our objective standard for determining whether an officer acts with a reasonable suspicion we ask whether "the facts available to the officer warrant the officer, as a person of reasonable caution, to believe the action taken was appropriate[.]" *City of Roswell v. Hudson*, 2007-NMCA-034, ¶ 15, 141 N.M. 261, 154 P.3d 76. Here, whether or not the stabbing suspect actually hid was not a fact known to Deputy Ruiz and is therefore not relevant to the question of whether the facts known to Deputy Ruiz would warrant a person to reasonably believe stopping the vehicle Defendant was driving was appropriate. Even so, based on his training and experience, Deputy Ruiz was aware that suspects often hide until they feel it is safe to continue on their way.

**{16}** Turning to the circumstances surrounding the stop of Defendant's vehicle, we agree with the State that the facts are similar to those in *State v. De-Jesus Santibanez*, 1995-NMCA-017, 119 N.M. 578, 893 P.2d 474. In *De-Jesus Santibanez* the Otero County Sheriff's department received a BOLO describing a vehicle suspected of carrying marijuana and cocaine traveling to Colorado from El Paso, Texas on Interstate 25. *Id.* ¶ 3. The BOLO specifically described a "1970 or 1980 GMC or Chevrolet vehicle, brown with beige in the middle portion of the vehicle and with dark tinted windows." *Id.* Approximately thirty minutes after receiving the BOLO a deputy observed a vehicle matching the description travelling on Highway 54 approaching Alamogordo. *Id.* ¶ 4. Based on the BOLO the deputy decided to stop the vehicle which ultimately proved to be the vehicle sought. *Id.* ¶¶ 5-7. On appeal this Court held that the investigatory stop was justified by reasonable suspicion based on the information in the BOLO, observing that the defendant's vehicle matched the BOLO description. *Id.* ¶¶ 11, 13. Notably, this Court also concluded that that while the BOLO specified Interstate 25, it was reasonable

for the deputy "to consider whether a vehicle carrying contraband might travel on a lesser travelled route in order to escape detection."[1] *Id.* ¶ 12.

**{17}**     The BOLO description in this case provided similar physical descriptors as those provided in *De-Jesus Santibanez*. Both descriptions provided approximate makes and colors of the respective sought-after vehicles. Like *De-Jesus Santibanez*, Defendant's vehicle substantially matched the description provided in the BOLO. Further, as in *De-Jesus Santibanez*, it was reasonable for Deputy Ruiz to believe that the suspect sought in the BOLO might have traveled in a different direction than provided in the BOLO. Given Deputy Ruiz's training and experience we further conclude that Deputy Ruiz reasonably considered that the suspect described in the BOLO might hide for a period of time after the stabbing to escape detection. We therefore conclude that Deputy Ruiz's suspicion was reasonable despite stopping Defendant approximate thirty-seven to forty-minutes after the BOLO was issued.

**{18}**     Accordingly, we hold that—under the totality of the circumstances—Deputy Ruiz's traffic stop was justified by reasonable suspicion and complied with the requirements of both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. *See State v. Yazzie*, 2016-NMSC-026, ¶ 38, 376 P.3d 858 (stating that our courts "have never interpreted the New Mexico Constitution to require more than a reasonable suspicion that the law is being or has been broken to conduct a temporary, investigatory traffic stop . . . [and w]e have defined and applied the reasonable suspicion standard in the same way when conducting both Fourth Amendment and Article II, Section 10 analyses").

**{19}**     To the extent Defendant argues on appeal that the description in the BOLO was not sufficiently particularized to support the traffic stop, we disagree. In making this argument Defendant relies in part on *King v. United States* in which the court held that an alert describing a suspect as a "26-year old white male with a height between 5'10" and 6'3", short dark hair, glasses, and a thin build" could apply to a "broad swath of the population" and therefore the description alone was not sufficient to support reasonable suspicion. 917 F.3d 409, 423 (6th Cir. 2019), *cert. granted sub nom. Brownback v. King*, 140 S. Ct. 2563 (2020), *and cert. denied sub nom. King v. Brownback*, 140 S. Ct. 2565 (2020). Defendant asserts that like the insufficient description in *King*, the BOLO description in this case applies to a broad class of vehicles i.e. "a grey or silver Honda" and that without confirming other details—such as the driver's physical description— Deputy Ruiz lacked reasonable suspicion to justify the traffic stop. However, unlike the general description in *King* and contrary to Defendant's description of the BOLO in his brief, here the alert not only identified the make, model and approximate color of the vehicle sought but also that the vehicle bore a distinct out-of-state license plate. These characteristics are much more specific than the broad description at issue in *King*.

---

[1]The Court also concluded that it was reasonable for the deputy to believe that a vehicle traveling from El Paso would have a Texas License plate even though the BOLO did not describe the vehicle's plates. *Id.* ¶ 12.

**{20}** Finally, Defendant also argues that we should affirm the district court's ruling under the right for any reason doctrine. Defendant posits two arguments as to why this Court should apply the doctrine. First, Defendant asserts that the State failed to meet its burden because the sergeant that directed Deputy Ruiz to stop Defendant's vehicle did not testify to his reasons for the directive. Second, Defendant asserts that we should apply a higher standard of suspicion under Article II, Section 10 of the New Mexico Constitution in this case because—as Defendant states—the BOLO involved a completed crime. We conclude that neither of Defendant's arguments are appropriate grounds for application of the right for any reason doctrine and explain our reasons as to each argument in turn.

**{21}** "Under the right for any reason doctrine, an appellate court may affirm a district court ruling on a ground not relied upon by the district court if (1) reliance on the new ground would not be unfair to the appellant, and (2) there is substantial evidence to support the ground on which the appellate court relies." *Freeman v. Fairchild*, 2018-NMSC-023, ¶ 30, 416 P.3d 264 (alterations, internal quotation marks, and citation omitted). "When applying the right for any reason rationale, appellate courts must be careful not to assume the role of the trial court by delving into fact-dependent inquiries." *Id.* (alteration, internal quotation marks, and citation omitted).

**{22}** Applying the doctrine to affirm the district court's ruling based on the State's failure to call an additional witness requires this Court to make a fact-dependent inquiry which we will not do. Although Defendant accurately points out that the district court expressed some concern over the directive from Deputy Ruiz's sergeant, its discussion of the issue was not substantial and devoid of any specific factual findings necessary to our analysis of this issue. For example, whether the State was required to provide evidence that the sergeant had reasonable suspicion depends on a determination that Deputy Ruiz relied solely on the sergeant's order when he decided to stop Defendant—a fact which the district court did not determine despite its apparent skepticism. *Cf. State v. Gorsuch*, 1974-NMCA-143, ¶ 7, 87 N.M. 135, 529 P.2d 1256 (reversing the defendant's conviction where arrest was predicated on a directive from a superior officer without evidence showing how the superior officer "concluded that the defendant had committed any crime"). We find this significant because Deputy Ruiz testified that although he acted in part on his sergeant's directive, he also articulated his own understanding that Defendant's car matched the description in the BOLO. We do not construe the district court's skepticism in this regard as a rejection of Deputy Ruiz' testimony and will not entertain such a conclusion where the court's ultimate ruling did not turn on this issue.

**{23}** Regarding Defendant's argument that we should apply a higher standard of suspicion under Article II, Section 10 of the New Mexico Constitution because the BOLO concerned a completed crime, we note that Defendant acknowledges that our courts have never applied a higher standard than the reasonable suspicion standard utilized under the Fourth Amendment. Indeed, our Supreme Court stated as much in *Yazzie. See* 2016-NMSC-026, ¶ 38 ("Although we have interpreted Article II, Section 10 to provide broader protections against unreasonable search and seizure than the Fourth

Amendment in some contexts, we have never interpreted the New Mexico Constitution to require more than a reasonable suspicion that the law is being or has been broken to conduct a temporary, investigatory traffic stop"). We are not inclined to expand our state constitutional jurisprudence pursuant to the right for any reason doctrine where our Supreme Court has otherwise indicated that it is not willing to do so.

**CONCLUSION**

**{24}** We reverse the district court's suppression order and remand for proceedings in accordance with this opinion.

**{25}  IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**J. MILES HANISEE , Chief Judge**

**KRISTINA BOGARDUS, Judge**