This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39324**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**LAVERNA COKER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** This matter was submitted to the Court on the brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases Involving the Law Offices of the Public Defender, from the Eleventh Judicial District Court in *In re Pilot Project for Criminal Appeals*, No. 2019-002, effective October 1, 2019. Having considered the brief in chief, concluding the briefing submitted to this Court provides no possibility for reversal, and determining that this case is appropriate for resolution on Track 1 as defined in that order, we affirm for the following reasons.

**{2}** Defendant appeals from a judgment and sentence entered after Defendant pled no contest to possession of methamphetamine, reserving the right to appeal the denial of her motion to suppress. Our review of a district court's order on a motion to suppress presents "a mixed question of fact and law." *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. "In reviewing a district court's ruling denying a motion to suppress, the appellate courts draw all reasonable inferences in favor of the ruling and defer to the district court's findings of fact as long as they are supported by substantial evidence." *State v. Murry*, 2014-NMCA-021, ¶ 10, 318 P.3d 180. "[W]e then review de novo the [district] court's application of law to the facts to determine whether the search or seizure were reasonable." *Leyva*, 2011-NMSC-009, ¶ 30.

**{3}** Defendant's motion challenged the validity of the stop of her vehicle near a Driving-While-Intoxicated (DWI) checkpoint. [RP 39] Specifically, Defendant has claimed that the factual basis for the stop was inadequate to establish reasonable suspicion under our case law addressing evasion of DWI checkpoints. *See State v. Anaya*, 2009-NMSC-043, ¶¶ 11-18, 147 N.M. 100, 217 P.3d 586 (setting forth guidelines to determine whether reasonable suspicion of DWI arises from purportedly evasive driving behavior near a DWI checkpoint); *State v. Salazar*, 2019-NMCA-021, ¶ 13, 458 P.3d 546 ("A legal turn observed in combination with other circumstances may well support a reasonable suspicion of criminal activity—particularly where the circumstances suggest the turn is made for the purpose of evading the checkpoint.").

**{4}** "A police officer can initiate an investigatory traffic stop without infringing the Fourth Amendment [of the United States Constitution,] or Article II, Section 10 [of the New Mexico Constitution] if the officer has a reasonable suspicion that the law is being or has been broken." *State v. Martinez*, 2018-NMSC-007, ¶ 10, 410 P.3d 186 (internal quotation marks and citation omitted). "[We] will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Dopslaf*, 2015-NMCA-098, ¶ 8, 356 P.3d 559 (internal quotation marks and citation omitted). "This includes reasonable suspicion that a traffic law has been violated." *State v. Siqueiros-Valenzuela*, 2017-NMCA-074, ¶ 11, 404 P.3d 782. "The subjective belief of the officer does not in itself affect the validity of the stop; it is the evidence known to the officer that counts, not the officer's view of the governing law." *State v. Munoz*, 1998-NMCA-140, ¶ 9, 125 N.M. 765, 965 P.2d 349.

**{5}** Here, we do not deem it necessary to address Defendant's challenge to the factual basis to support the stop under the analysis set forth in *Anaya* and *Salazar*, because even if we assume, arguendo, that Defendant is correct, we conclude that there was a sufficient independent basis for the stop. *See State v. Hubble*, 2009-NMSC-014, ¶ 29, 206 P.3d 579 (stating that the reviewing court must still determine "if there were other facts surrounding the officer's decision to conduct the traffic stop that could provide the objective grounds for reasonable suspicion"); *State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828 (holding that the appellate court will affirm the district court's decision if it is right for any reason, so long as it is not unfair to the appellant). Specifically, the facts known to the officer gave him reasonable suspicion

to stop Defendant's vehicle based on NMSA 1978, Section 66-7-323 (1978), which states:

> No vehicle shall be turned so as to proceed in the opposite direction upon any curve, or upon the approach to, or near the crest of a grade, where such vehicle cannot be seen by the driver of any other vehicle approaching from either direction within one thousand feet.

**{6}** At the hearing on the motion to suppress, Officer Dwayne Simpson testified that he was assigned to the chase unit at a DWI checkpoint around 4:45 p.m. when he observed a car that pulled off of the road, and "appeared to be attempting to make a U-turn." [CD 12/12/19 6:45] The checkpoint was at the bottom of a hill, and although there is some conflict in the officer's testimony about whether Defendant had pulled off the road before reaching the crest of the hill, or did so just over the crest, the material fact for purposes of the statute is that the attempted U-turn was near the crest of the hill. [BIC 1; CD 12/12/19 7:55-9:20] The officer testified that the location of the attempted U-turn was not safe because other traffic comes over the hill. [CD 12/12/19 9:20] The officer noted that there is a statute that says you cannot make a U-turn at the crest of the hill. [CD 12/12/19 14:00] The officer also stated that he activated his emergency lights and made the stop based on this information. [CD 12/12/19 15:15]

**{7}** Although the officer also testified that he believed Defendant's behavior indicated she was attempting to avoid the checkpoint [CD 12/12/19 7:55], we do not need to consider this for purposes of the stop based on Section 66-7-323. This is in contrast to *Anaya*, 2009-NMSC-043, ¶ 13, and *State v. Salazar*, 2019-NMCA-021, ¶ 13, where the U-turns were otherwise legal and no independent moving violation was involved, and therefore it was necessary to address the defendants' conduct as it related to a stop based on reasonable suspicion of DWI. Although the officer did not issue a citation based on a violation of Section 66-7-323, this does not affect our conclusion that the stop was reasonable. *See, e.g.*, *State v. Brennan*, 1998-NMCA-176, ¶¶ 2, 12, 126 N.M. 389, 970 P.2d 161 (holding that, regardless of whether the defendant was ultimately convicted of careless driving, the officer had reasonable suspicion that he was driving carelessly, and accordingly the stop, which evolved into a DWI investigation, was justified).

**{8}** Although Defendant relies on some of the officer's testimony that suggests that Defendant had simply turned her wheels and was not commencing a U-turn [BIC 13-15], the officer also testified that Defendant had both turned her wheels left and that she had started to move her vehicle in an attempt to make a U-turn. [CD 12/12/19 9:45, 12:50] This supports the district court's finding that Defendant was about to make the turn. [RP 65] *See State v. Morales*, 2000-NMCA-046, ¶ 8, 129 N.M. 141, 2 P.3d 878 (stating that when parts of a witness's testimony are "conflicting and ambiguous[,] . . . [i]t is the exclusive province of the jury to resolve [the] factual inconsistencies in [that] testimony" (internal quotation marks and citation omitted)). We also conclude that the officer did not have to wait until Defendant completed the U-turn, since Defendant's

intent to complete the turn may be inferred from her actions; nor was the officer required to wait until the danger of making the illegal move was complete.

**{9}** We therefore conclude that reasonable suspicion supported the stop and the motion to suppress was properly denied. Based on the foregoing, we affirm.

**{10} IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**MEGAN P. DUFFY, Judge**