NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0396-23

THURMAN HOGAN,

     Plaintiff-Appellant,

v.

VOLKSWAGEN GROUP OF
AMERICA, INC.,

     Defendant-Respondent.

_____

Submitted November 12, 2024—Decided December 12, 2024

Before Judges Sabatino, Gummer and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0580-22.

Kimmel & Silverman, PC, attorneys for appellant (Jason Greshes and Robert M. Silverman, on the brief).

Biedermann Hoenig Semprevivo, attorneys for respondent (Steven A. Andreacchi and Lucy M. Reynoso, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

The primary issue in this case concerns the interpretation of the New Jersey Motor Vehicle Warranty Act ("the Lemon Law"), N.J.S.A. 56:12-29 to -49. The Legislature enacted the Lemon Law to advance robust public policies that protect new car purchasers from enduring unacceptable burdens caused by manufacturing defects. Among other things, the Lemon Law empowers courts to award consumers who timely report such manufacturing defects "specific remedies where the uncorrected defect substantially impairs the use, value, or safety of the new motor vehicle." N.J.S.A. 56:12-29.

As we explain in more detail, the manufacturing defect in this case involves a crack in a new SUV's front windshield that emerged two days after plaintiff had acquired the car. The crack increased in size as time passed, purportedly hindering the driver's view and creating an alleged safety hazard. Plaintiff promptly reported the crack, a condition covered by the vehicle manufacturer's warranty, to the manufacturer and the dealership that had sold him the vehicle. Despite plaintiff's repeated requests to have the windshield repaired or replaced, ten months passed before the defendant manufacturer did so, after plaintiff filed suit. In the meantime, plaintiff contends he restricted his use of the SUV, avoiding highways and driving it with trepidation at lower

2

speeds as the crack worsened. The manufacturer refused to provide him with a loaner vehicle.

While the windshield was in its cracked condition, plaintiff filed suit against the manufacturer in the Law Division. He sought remedies under the Lemon Law and other statutes. The motion court granted summary judgment to the manufacturer, principally because by that time the manufacturer had replaced the windshield at no cost to plaintiff.

For the reasons elaborated in the published portion of this opinion, we reverse the summary judgment dismissal of plaintiff's Lemon Law claim. Viewing the facts in a light most favorable to plaintiff, a jury could rationally conclude the crack in the front windshield was a "substantial impairment" and that the manufacturer's ten-month delay in repairing the windshield was unreasonable, entitling plaintiff to recourse under the Lemon Law. As a non-dispositive but relevant part of our analysis, we note that New Jersey's motor vehicle code declares that motorists should not drive cars with "unduly fractured" windshields. N.J.S.A. 39:3-75. The Lemon Law claim is accordingly reinstated and the matter remanded for a jury trial.

In the unpublished portion of this opinion, we address plaintiff's other claims, most of which also survive summary judgment.

A-0396-23

I.

The pertinent facts are not complicated.  As noted, we consider them in a light most favorable to plaintiff, subject to the proofs at trial.  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

On December 17, 2021, plaintiff Thurman Hogan purchased for $34,279 a new 2022 Volkswagen Tiguan SUV from a Volkswagen dealership.  According to Hogan, he bought the SUV intending for his wife to use it as her personal daily vehicle.  The SUV was manufactured by defendant Volkswagen Group of America, Inc. ("Volkswagen" or "the manufacturer").

The SUV was covered by a four-year/50,000-mile manufacturer's warranty.  In pertinent part, the warranty declares it "covers any repair to correct a defect in [the] manufacturer's material or workmanship (i.e., mechanical defects), except wheel alignment, tire balance, and the repair or replacement of tires."

Two days after Hogan obtained the SUV, he discovered it exhibited a small stress fracture on the top center of its front windshield.  Hogan asserts the crack was spontaneous and not due to any impact while driving.

Shortly thereafter, on or about January 3, 2022, Hogan brought the SUV to the dealership for repair, pointing out the windshield crack.  The dealership

A-0396-23

did not immediately repair the windshield, stating the regional manager needed to inspect the vehicle first.

As time went by, the crack expanded both vertically and horizontally. According to Hogan, the crack "kept growing, running through the rearview mirror mounting and then straight down the windshield." "[A]fter time it reached a point where it also started extending horizontally across the windshield in both directions. It eventually looked like an upside-down [letter] T."

Hogan returned to the dealership for repair three more times in January and February 2022. He was turned away each time, and his request for a loaner vehicle was denied.

In or about March 2022, the dealership told Hogan it would replace his windshield. Although he then left the SUV overnight for repair, the crack was not addressed because the dealership had been informed it could not replace the windshield with an "aftermarket" windshield and instead needed a windshield supplied by Volkswagen.

On March 23, 2022, Hogan contacted Volkswagen directly. He informed the manufacturer that the crack had appeared two days after he took possession of the vehicle and that the dealership had been trying for three months to have

A-0396-23

someone from Volkswagen assess the issue but no one did so. He noted the dealership had tried to order the windshield, but it was reportedly "on back order." Hogan asked Volkswagen if it had "any ETA" (i.e., estimated time) on when the replacement would be available. Volkswagen repeatedly told Hogan that an ETA on the windshield was unknown. In April 2022, Hogan submitted a request to Volkswagen to take the SUV back, but Volkswagen denied that request.

As the crack grew even larger, extending across the driver's view and into the passenger side, Hogan no longer felt comfortable with his wife driving the vehicle for longer than short local trips. According to Hogan, at this point, the crack obscured vision through the windshield due to light refracting through the glass, causing double images. Hogan changed his route to work so that he would no longer drive on highways. He generally limited his speed to no greater than 40 mph, due to fear that higher speeds would cause the windshield to fail completely. In addition, Hogan began handwashing the SUV because he was worried the car wash machinery would similarly rupture the windshield.

The SUV was inspected by Hogan's automotive expert, a certified Automotive Service Excellence Master Technician, in September 2022. The mileage on the vehicle odometer at that time was 12,069. At that point, the

A-0396-23

fracture had spread, covering most of the windshield.[1]

Hogan's expert found the view from inside the vehicle would be substantially impaired when driving.[2] He noted there was no impact damage, chips, or scratches on the failed windshield, which signified the crack was due to a warrantable manufacturing error.

Hogan's expert opined in his report that the "market value of this vehicle has been substantially impaired" and Volkswagen had "failed to resolve this vehicle's verified warrantable defect in a reasonable time." He opined in his report that "[t]his vehicle with its windshield defect would be considered to be in 'Fair' condition," which he defined as "a vehicle that has some mechanical or cosmetic defects and needs servicing, but is still in safe running condition."[3] He estimated "the diminution in value of this vehicle, as warranted and as delivered[,] is equal to no less than $4,113.00[,] which is 12% of the purchase

---

[1] The expert took photographs of the windshield and included those photos in his report. However, the quality of the photos as reproduced in the appendix is poor, and it is difficult to distinguish any details within them. In any event, given this summary judgment context, we assume for motion purposes that the observations of Hogan and his expert about the windshield's condition are accurate.

[2] As noted by defendant, the expert did not perform a driving test on the vehicle.

[3] As described in the expert's report, this classification refers to the windshield defect at the time of Hogan's purchase, i.e. when the defect was latent.

A-0396-23

price."

Hogan filed his complaint against Volkswagen on October 14, 2022, invoking the Lemon Law and the Magnuson-Moss Warranty–Federal Trade Commission Improvement Act ("Magnuson-Moss Act"), 15 U.S.C. §§ 2301-2312. Shortly thereafter, on October 31, 2022, Volkswagen installed a new windshield. The repair report noted under its "description of service and parts" section that the "inspection found [the] vehicle had [a] crack in [its] windshield due to stress pressure" and listed the amount owed as covered under "warranty." All told, despite Hogan's many requests to the dealership and the manufacturer, the SUV remained in its damaged state for 320 days, a period of over ten months.

Volkswagen had the SUV inspected, post-repair, by one of its Product Analysis Engineers in March 2023. He found the vehicle in its present condition performed well, and the new windshield had been properly installed. Reviewing the photos taken by Hogan's expert, the Volkswagen expert commented that part of the crack could have been "caused by an impact with a foreign object" and that "[t]he crack did not appear to obscure the driver's view." He described the photo of the crack showing "that the crack was approximately half-way across the passenger's side of the windshield and less than half-way across the driver's side of the windshield." The engineer concluded that "[i]t is my opinion, to a

reasonable degree of automotive engineering certainty, that there has been no impairment of use, value or safety in this vehicle as a result of any issues complained of by [p]laintiff."

Following Hogan's deposition and other discovery, Volkswagen moved for summary judgment, asserting that its successful repair of the vehicle's windshield barred recovery under both the Lemon Law and the Magnuson-Moss Act. After hearing argument, the motion court granted the motion and dismissed Hogan's lawsuit on September 12, 2023.

In its oral opinion, the motion court stated that in accordance with the summary judgment standard, it assumed the windshield crack was "purely a defect with regard to the [windshield]" and not due to impact damage. The court described its understanding of the crack as spanning horizontally "two thirds on either side" and vertically down the "middle to [the] lower part of the windshield." The court noted it lacked sufficient information concerning "at what point [] the extension of the crack ultimately impact[ed] the driver's ability to operate the vehicle." However, the court was presented with Hogan's contentions that the crack caused light refraction leading to double images, and that due to safety concerns Hogan restricted his speed to 40 mph, avoided highways, and did not take the SUV to car washes. The court also was informed

that Hogan and his wife are "working people that need to get to work. They have to use the vehicle."

Nevertheless, the court granted summary judgment. It remarked that "if it was anything other than a [cracked] windshield . . . [s]ummary [j]udgment would not be appropriate for the court to consider." The court concluded that Hogan's "confidence in the vehicle has been fully restored" now that the windshield was replaced. The court reasoned that a defendant manufacturer is insulated from a Lemon Law claim once a nonconformity has been repaired. The court stated it was "mindful of the fact that this did happen in 2021 and the fact that it was during COVID and there were product delays." The court noted that a common remedy for proven claims under the Lemon Law is a return of the vehicle and a refund to the consumer, but doubted that Hogan wanted that remedy, now that the windshield had been repaired.

The court similarly found there was no merit to Hogan's breach-of-warranty claims under the Magnuson-Moss Act because the windshield was successfully replaced at no cost to Hogan.

This appeal ensued. Hogan contends the motion court misapplied the summary judgment standard and the terms of the Lemon Law and the Magnuson-Moss Act. He argues there is ample evidence of Volkswagen's

failure to repair a defect or condition that "substantially impaired the use, value, or safety" of the vehicle "within a reasonable period of time."  Hogan asserts the issues of (1) whether the growing windshield crack amounted to a substantial impairment, and (2) whether the ten-month delay in making the repair was an unreasonable amount of time are questions for a jury to determine.

Volkswagen, meanwhile, argues the court rightly decided those questions in its favor.  Volkswagen also underscores the court's finding that Hogan's confidence in the vehicle, post-repair, had been "fully restored."

## II.

The Lemon Law provides protection to consumers purchasing new motor vehicles.  N.J.S.A. 56:12-29 to -49.  The Lemon Law was enacted as a result of manufacturing defects in motor vehicles imposing undue economic burdens on consumers.  As expressed in the statute:

> [T]he purchase of a new motor vehicle is a major, high cost consumer transaction and the inability to correct defects in these vehicles creates a major hardship and an unacceptable economic burden on the consumer.  It is the intent of this act to require the manufacturer of a new motor vehicle . . . to correct defects originally covered under warranty which are identified and reported within a specified period.  It is the further intent of this act to provide procedures to expeditiously resolve disputes between a consumer and a manufacturer . . . when defects in a new motor vehicle are not corrected within a reasonable time, and to

11

provide to award specific remedies where the uncorrected defect substantially impairs the use, value, or safety of the new motor vehicle.

[N.J.S.A. 56:12-29.]

"[T]he Act should be interpreted liberally since the expressed general intent of the Lemon Law is to protect the new car consumer." Casal v. Hyundai Motor Am., 436 N.J. Super. 296, 302 (App. Div. 2014).

Under the Lemon Law, the plaintiff has the burden of establishing by a preponderance of the evidence that: (1) during the first 24 months or 24,000 miles of operation;[4] (2) the subject vehicle manifested a nonconformity defined as a "defect or condition that substantially impairs the vehicle's use, value or safety"; and (3) the manufacturer was unable to remedy the condition in a reasonable amount of time. N.J.S.A. 56:12-30 to -32.

If a plaintiff can establish these preconditions for relief under the Lemon Law, the plaintiff is entitled to return the vehicle to the manufacturer and to receive "a full refund of the purchase price . . . less a reasonable allowance for vehicle use." N.J.S.A. 56:12-32(a) to (a)(1).[5]

---

[4] These numerical requirements are indisputably met here.

[5] However, in addition to that remedy of a refund, the Lemon Law also instructs that a prevailing consumer may obtain any remedies that are authorized by "any

A-0396-23

Frequently, questions of fact can arise in Lemon Law and warranty cases as to whether a nonconformity existed that substantially impaired the use, value, or safety of a vehicle and whether that defect was remedied in a reasonable amount of time. Model Jury Charges (Civil), 4.45, "Motor Vehicle Lemon Law" (rev. Nov. 2023) (specifying in the model verdict form that the jury must find whether there was a substantial impairment and whether the nonconformity was repaired within a reasonable amount of time); Gen. Motors Acceptance Corp. v. Jankowitz, 216 N.J. Super. 313, 334 (App. Div. 1987) (finding under pre-Lemon Law breach of warranty cases it is a question of fact as to whether a nonconformity exists in the vehicle that substantially impairs its value).

Our Lemon Law case law applies a mixed objective and subjective approach in evaluating whether a new vehicle's nonconformity substantially impaired its use, value, or safety. Berrie v. Toyota Motor Sales, U.S., Inc., 267 N.J. Super. 152, 157 (App. Div. 1993). The objective component focuses on "what a reasonable person in the buyer's position would have believed" about the nonconformity. Ibid. The subjective component is "personalized in the sense that the facts must be examined from the viewpoint of the buyer and his

other law." N.J.S.A. 56:12-47. In this case, the Magnuson-Moss Act qualifies as such "other law."

circumstances." Ibid. In that regard, it is relevant but not dispositive whether the consumer's "confidence" in the vehicle has been "shaken." Ibid.; see also Singer v. Toyota Motor Sales, U.S.A., Inc., 476 N.J. Super. 121, 132 (App. Div. 2023).

Here, the motion court did not give sufficient regard to the evidence of (1) safety concerns, (2) usage restrictions, and (3) diminished value presented by Hogan and his expert.

First, the growing length and width of the windshield crack, which Hogan attested had distorted light and impeded his vision, could reasonably have been deemed by a jury to be a substantial impairment of the vehicle's safety. Although it is not dispositive, we note the relevance of N.J.S.A. 39:3-75, which prohibits driving a vehicle with "unduly fractured" safety glazing material or material that "causes undue or unsafe distortion of visibility." We recognize Hogan continued to drive the SUV with a cracked windshield and was not ticketed for doing so. Even so, the motor vehicle code provides an indication of a legislative safety concern relating to windshields.[6] If this case is tried by a jury, the court will have the discretion to instruct the jurors about this statutory

---

[6] To be clear, we do not hold that every condition of a new car that violates the motor vehicle code in Title 39 creates a per se situation of substantial impairment under the Lemon Law.

14                                                                          A-0396-23

provision. See Hrymoc v. Ethicon, 467 N.J. Super. 42, 51, 69 (App. Div. 2021), modified on other grounds 254 N.J. 446 (2023).

We also point out that two reported opinions from other jurisdictions have noted the dangers of cracked windshields. A New Mexico appellate court has held that windshield cracks that obscure a driver's vision may constitute a safety hazard and thereby endanger the public. State v. Munoz, 965 P.2d 349, 353 (N.M. Ct. App. 1998). Additionally, a federal district court in California has concluded in a products liability case that "the defective [cracked] windshields in the [vehicles] create an unreasonable safety risk that would be material to a reasonable consumer." Ehrlich v. BMW of N. Am., LLC, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010).

Second, Hogan's use of the SUV, as described in his deposition testimony and his affidavit opposing summary judgment, was also restricted by the windshield crack. He contends he avoided driving on highways or over 40 mph, altering his routes to reduce the risks of the windshield failing completely. We realize that Hogan drove the SUV about 13,000 miles over a period of ten months before the windshield was replaced, but that mileage figure does not necessarily signify that Hogan reasonably received the usage of the new vehicle he had anticipated.

A-0396-23

Third, the report of Hogan's expert provides evidence that the SUV had a reduced market value because of the windshield crack, at least during the ten months the defect persisted.

The motion court improvidently overlooked or minimized these considerations of use, value, and safety by declaring that it would have denied summary judgment if the defect had been "anything other than a [cracked] windshield." That categorical pronouncement of insubstantiality went too far. It deprived Hogan of a fair opportunity to have a jury make the critical assessment of whether the cracked windshield substantially impaired the vehicle's use, value, or safety. On these facts a jury might have rationally reached the opposite conclusion, after assessing the credibility of the witnesses. Or it might not have. Regardless, the court erred in deciding the question itself.

The motion court unduly focused on the ultimate repair of the windshield in concluding that Hogan's confidence in the vehicle had been "fully restored." But that overlooks the interim hardship and inconvenience that Hogan asserted he and his wife experienced in the intervening ten months while he was awaiting a repair, which notably occurred only after he filed this lawsuit. A jury could reasonably find credible that Hogan's confidence was shaken during that ten-month period.

16

The court misstated the law in declaring that no Lemon Law claim could be tenable so long as the defect was eventually repaired, overlooking the statute's "reasonable time" requirement.  See DiVigenze v. Chrysler Corp., 345 N.J. Super. 314, 329–30 (App. Div. 2001).  A jury could rationally conclude from the totality of circumstances that the ten-month repair delay was unreasonably long.  The court should have been more attentive to the "reasonable time" requirement of the statute.

Volkswagen's contention that a replacement windshield was on backorder due to supply chains that were out of its control can be duly considered by a jury as it assesses the reasonableness issue.  See Singer, 476 N.J. Super. at 127.  Likewise, a jury may consider Hogan's counterargument, if supported by admissible evidence, that Volkswagen had windshields in stock that would fit Hogan's SUV and made a business decision to install those windshields in new vehicles instead.

In sum, the motion court erred in granting summary judgment dismissing Hogan's Lemon Law claim.  The order is vacated, and the matter is remanded for trial on that claim.

III.

17

In this unpublished portion of the opinion, we briefly address Hogan's claims under the federal Magnuson-Moss Act, including his claims of Volkswagen's breach of express and implied warranties.

The Magnuson-Moss Act was enacted in 1975 as a "response to the 'irate owners of motor vehicles complaining that automobile manufacturers and dealers were not performing in accordance with the warranties on their automobiles.'" Ryan v. Am. Honda Motor Co., Inc., 186 N.J. 431, 433–34, (2006) (quoting Motor Vehicle Mfrs. Ass'n of U.S. v. Abrams, 899 F.2d 1315, 1317 (2d Cir. 1990)). The Magnuson-Moss Act operates to ensure the enforceability of consumer warranties. Ventura v. Ford Motor Corp., 180 N.J. Super. 45, 59 (App. Div. 1981). Under New Jersey law, a Magnuson-Moss Act claim is substantively the same as a claim for breach of warranty under the New Jersey Uniform Commercial Code ("UCC"). Poli v. DaimlerChrysler Corp., 349 N.J. Super. 169, 181 (App. Div. 2002). Notably, "an action for breach of an implied or expressed warranty under the UCC is a cause of action under the Magnuson-Moss Warranty Act." Jankowitz, 216 N.J. Super. at 331.

The Magnuson-Moss Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or

A-0396-23

service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). A limited warranty to repair or replace defects in a vehicle fails in its essential purpose if the seller "is unable to put the goods in a warranted condition" "within a reasonable time after a defective part is discovered." Jankowitz, 216 N.J. Super. at 329–30.

To sustain a claim of breach of warranty or a violation of the Magnuson-Moss Act, a plaintiff must show: "(i) the item at issue was subject to [an express or implied] warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of [repair] attempts." Temple v. Fleetwood Enters., 133 Fed. Appx. 254, 268 (6th Cir. 2005); see 15 U.S.C. § 2304(a)(1) (stating "such warrantor must as a minimum remedy such consumer product within a reasonable time and without charge, in the case of a defect, malfunction, or failure to conform with such written warranty"); see also Poli, 349 N.J. Super. at 171 (finding that a warranty claim under the Magnuson-Moss Act requires the seller to fail to perform the required repair within a reasonable period of time).

Remedies under the UCC and Magnuson-Moss Act include returning the goods for a refund or the repair and replacement of nonconforming products.

N.J.S.A. 12A:2-719(1)(a); 15 U.S.C. § 2304(a)(4); <u>see</u> <u>Ryan</u>,186 N.J. at 433–34 (finding that the Magnuson-Moss Act requires, at minimum, a warrantor must remedy defects within a reasonable time and without charge, and if the warrantor does not "remedy the defects reasonably promptly, the warrantor must provide a refund or replacement").

Revocation is available as a remedy for breach of warranty only if the defect(s) caused a substantial impairment to the vehicle. N.J.S.A. 12A:2-608(1); <u>Jankowitz</u>, 216 N.J. Super. at 334–35. A plaintiff's "measure of damages for a breach of warranty" under the statute is "the difference between the price paid for the [vehicle] and its market value in the defective condition." N.J.S.A. 12A:2-711(1); <u>see</u> <u>Jankowitz</u>, 216 N.J. Super. at 331. In many ways, these provisions and remedies overlap with those codified in our state's Lemon Law.

Viewing the record again in a light most favorable to Hogan, we conclude the motion court erred in dismissing his Magnuson-Moss Act claims insofar as they specifically assert breaches of the express warranty and the implied warranty of merchantability. Under the Magnuson-Moss Act as described above, a warrantor must remedy the defect and do so "within a reasonable time." Although Volkswagen ultimately replaced the windshield pursuant to the express warranty after Hogan filed this lawsuit, a jury could reasonably conclude

the warranty was not honored within a timely manner.

The implied warranty of merchantability under the UCC constitutes a promise that all goods a merchant sells are "fit for the ordinary purposes for which such goods are used." N.J.S.A. 12A:2-314(2)(c). Even though the windshield crack had not manifested in the SUV at the time it was sold to Hogan, it was noticed very soon thereafter, two days after he had obtained the vehicle. A jury would need to evaluate the issue of whether the vehicle sold with the manufacturing error was fit its ordinary purpose.

That said, we reject Hogan's argument that the motion court erred in dismissing his separate claim that Volkswagen breached an implied warranty the SUV would be fit for a particular purpose. The implied warranty of fitness under the UCC implies a promise that goods will be fit for a purchaser's particular use, provided that "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." N.J.S.A. 12A:2-315.

Hogan argues the SUV was unable to be used for its particular purpose as the primary vehicle for his wife, as he felt uncomfortable with her driving the vehicle to work or any long distances due to the crack. In response, Volkswagen

argues that as the vehicle's manufacturer, and not the direct seller to Hogan, it could not have had knowledge of the SUV's particular purpose as Hogan's wife's personal vehicle.

Hogan has not demonstrated a genuine issue of material fact with respect to Volkswagen's alleged breach of the implied warranty of fitness for a particular purpose. Hogan has not presented any indication that the vehicle was intended for any purpose other than that of an ordinary passenger vehicle. He points to no evidence that would identify a particular purpose for which the vehicle was selected at the time of sale, nor how Volkswagen as the manufacturer was involved in the dealership's sale. The motion court accordingly did not err in granting summary judgment regarding the warranty of fitness for a particular purpose.

Affirmed in part and reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION